GEORGE A. DUNNIGAN, Respondent, *v.* H. R. KATHAN, Appellant.

(County Court, Saratoga County, September, 1907.)

Parties — Plaintiffs — Trustee of express trust.

> Where a subscription agreement to promote a local manufacturing enterprise also authorizes a person therein named to pay the subscription money to the firm of manufacturers proposing to erect and operate a shirt factory in the village, upon the completion of the building with one hundred machines there ready for work, in case of their failure to so do, the money to be returned to the contributors, an action against one of the signers for his unpaid subscription can only be maintained by the *quasi* trustee named in the subscription agreement in whose judgment the subscribers apparently reposed a special confidence and trust.

County Court, Saratoga County, September, 1907. [Vol. 56.

APPEAL from a justice's judgment in an action to recover the amount of an alleged unpaid subscription to promote a local manufacturing enterprise.

James McPhillips, for respondent.

James A. Leary, for appellant.

ROCKWOOD, J. Aside from several substantial objections urged by the appellant to the procedure herein, which resulted in a judgment for the plaintiff, it is doubtful if the plaintiff is in position to maintain this action.

The defendant, Kathan, with other residents of the village of Corinth, in order to promote a local manufacturing enterprise, signed his name to a subscription agreement of which the following is a copy:

"In consideration of the firm of Pitkin Bros. & Ide, of the village of Corinth, N. Y., building and erecting, or causing to be built and erected, a shirt factory upon some centrally located lot, within the said village, said building so to be erected to be 38 feet by 60 feet and finished in a proper manner for a shirt factory, and said Pitkin Bros. & Ide to, also at completion of said building, place therein one hundred sewing machines, and have the same in proper condition to work, and upon said company giving and executing a bond conditioned that they will pay out in said village to employees of said company for work performed in said factory a sum of twenty-five thousand ($25,000) dollars, which said bond shall be approved by the officers of the Business Men's Association of Corinth, N. Y., said factory to be in working order within four months from the date hereof.

"Now therefore in consideration of the above we the undersigned do hereby bind ourselves that we will pay the sums of money set opposite our respective names within thirty days from the date hereof to William J. Burnham, of the said village of Corinth, as a consideration and inducement to said Pitkin Bros. & Ide to locate a shirt factory in said village, and we hereby authorize said William J. Burnham to pay

the said money to the said firm of Pitkin Bros. & Ide, when they shall have erected said building and have one hundred machines placed therein ready for work, but, in case of their failure so to do, the said money so raised hereby is to be returned to the contributors by said William J. Burnham.

"Dated *May 8th,* 1899."

This action is brought to recover the amount of Kathan's unpaid subscription. At the trial a large amount of evidence was given by the plaintiff tending to show that the conditions of the agreement had all been fully complied with by Pitkin Brothers & Ide, the ultimate beneficiaries of the fund. This was controverted by the defendant who also attempted to establish a counterclaim by proving the rendition by him of certain services. In both of these contentions the defendant was unsuccessful and the jury found for the plaintiff the full amount claimed. From the judgment entered thereon an appeal has been taken to this court. After a careful examination of all of the interesting and somewhat perplexing questions of law and fact presented by the record, the court is of opinion that this action could be properly maintained only by William J. Burnham, the *quasi* trustee named in the subscription agreement.

From the evidence it appears that in 1899 Walter J. Pitkin, John H. Pitkin and Nathan B. Ide, united under the partnership name of Pitkin Brothers & Ide, and constructed a shirt factory at Corinth, N. Y. The citizens of that place manifested commendable interest in the new business and readily subscribed the money mentioned in the foregoing agreement. To insure an equitable distribution of the fund they named a well known resident, William J. Burnham, as the one to whom payments should be made, and authorized him to pay over the moneys to Pitkin Brothers & Ide only "when they shall have erected said building and have one hundred machines placed therein ready for work." If there was any failure in this respect "the said money so raised hereby is to be returned to the contributors by said William J. Burnham." From the circumstances surrounding the case and the positive language of the agreement, it is apparent

that the subscribers reposed a special confidence and trust in Mr. Burnham, relying upon his judgment in determining when Pitkin Brothers & Ide had honestly performed their part of the contract, and equally confiding in him to return to them their moneys should there be any failure of the plans.

Pitkin Brothers & Ide took no primary title to the moneys or subscriptions. Burnham was only authorized to pay over to them upon the consummation of certain conditions clearly · defined by the subscribers in their agreement. He could not assign the trust accepted by him without the consent of all of the subscribers, nor could Pitkin Brothers & Ide, by an assignment of their interest in the contract, substitute another in the place of Burnham to receive the moneys. Yet this is what has been attempted. It is claimed by the plaintiff that prior to the commencement of this action the interests of Nathan B. Ide in the copartnership of Pitkin Brothers & Ide, *and in the subscription agreement,* were purchased by the firm of Pitkin Brothers or the firm of J. H. & W. J. Pitkin. That subsequently John H. Pitkin and Walter J. Pitkin executed an assignment to Lawrence A. Kenny of Troy, of their rights under the original underwriting agreement " and the moneys to grow due thereunder." This, it is asserted, vested in Kenny the subscription of the defendant, Kathan. On May 20, 1905, Kenny made a written assignment of the rights he had acquired from Pitkin Brothers to the plaintiff, Dunnigan, who now brings this action as the assignee and owner of all the unpaid subscription moneys. We thus have the plaintiff, not a party to the original agreement and without the consent of Burnham or the other subscribers, standing in the place of Burnham by virtue of mesne assignments from Pitkin Brothers & Ide. This is an anomalous situation, evidently not contemplated by the original parties to the agreement and opposed to well established legal principles. Had Burnham been solely an intermediary through whom the money was to be physically paid over, or in effect simply a treasurer, as was the case in Presbyterian Society v. Beach, 74 N. Y. 72, a different case would be presented. He was, however, after the receipt of the moneys, to exercise his judgment, before making pay-

ment, as to the fulfillment of the conditions. He was se-
lected because the subscribers personally relied upon him.
An agent in whom personal confidence is placed cannot dele-
gate his powers nor can they be taken from him by the cir-
cumlocution of legal instruments without the consent of his
principals.

It was for Burnham to decide when the work was com-
pleted, and if it was not done his plain duty was to return
the money to the subscribers. He was the chosen representa-
tive of all of the parties and if any one, aside from the sub-
scribers themselves, had authority to sue for unpaid sub-
scriptions it was Burnham himself. As a condition prece-
dent to the payment of the money, Burnham was to decide
whether Pitkin Brothers & Ide had erected a factory build-
ing in Corinth of the dimensions and character described in
the agreement. There is nothing in the pleadings or record
showing that he ever definitely made such conclusion, or
that he ever communicated to the defendant, Kathan, his
decision, if any, or that he ever demanded payment from
Kathan. He has apparently been completely eliminated from
consideration.

The principle of Lawrence v. Fox, 20 N. Y. 268, is not
applicable here because of the personal equation of Burnham
in the agreement and the necessity of the application of his
discriminating judgment.

In Hutchins v. Smith, 46 Barb. 235, payment of sub-
scriptions was to be made to certain trustees named in the
agreement who were authorized to purchase grounds and erect
thereon a suitable building and fixtures for an academy.
This called upon the trustees to exercise their best judgment
in the fulfillment of the trust confided to them. They were
not mere treasurers or recipients of the fund, but had re-
ceived from the subscribers a commission involving personal
skill, trust and confidence. As trustees they brought the
action against Smith to enforce payment of his subscription,
and it was held by the court that "the action was properly
brought in the names of the trustees, who were the real par-
ties in interest."

The conclusion is reached, after much reflection, that

Dunnigan did not acquire such an interest in the agreement by virtue of the various assignments as would authorize him to maintain this action.   There were certain serious errors in rulings upon the admissibility of evidence and in the procedure adopted, to which appellant's counsel has called attention.   All of these have been fully examined but are not alluded to as the view above adopted precludes the necessity of so doing.

Judgment reversed, with costs.