GALLOGLY et al. v. WHITMORE.

(Supreme Court, Appellate Division, Third Department.   May 3, 1916.)

1. PARTIES ☞76(1)—WANT OF CAPACITY—DEMURRER OR ANSWER.
    Where a complaint discloses on its face that plaintiff has not legal capacity to sue, the objection should be taken by demurrer or answer, and not by motion to dismiss on the evidence.
    [Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 117–118, 120, 121; Dec. Dig. ☞76(1).]

2. JOINT ADVENTURES ☞8—SUBSCRIPTIONS TO BONDS—ENFORCEMENT—PARTIES.
    Where the managers of a syndicate for subscriptions to corporate bonds are in terms made the payees of the subscription, they may maintain an action to enforce payment of subscription.
    [Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 9; Dec. Dig. ☞8.]

3. JOINT ADVENTURES ☞8—SUBSCRIPTIONS TO BONDS—ACTIONS—PARTIES.
    A subscription agreement for the subscribers to purchase and take and the syndicate managers to deliver bonds subscribed for, the syndicate managers to have power to borrow, pledging the bonds and agreement, and payments to be made, the subscribers guaranteeing the lender to the amount of his subscription, gives the syndicate managers legal capacity to sue for subscriptions, under Code Civ. Proc. § 449, as trustees of an express trust, where the agreement was not pledged at the time of trial.
    [Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 9; Dec. Dig. ☞8.]

4. APPEAL AND ERROR ☞169—REVIEW—QUESTION NOT RAISED AT TRIAL.
    A question not raised at the trial will not be considered on appeal.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1018–1034; Dec. Dig. ☞169.]

5. APPEAL AND ERROR ☞1053(3)—HARMLESS ERROR—RECEPTION OF EVIDENCE CURED BY INSTRUCTIONS.
    Any question as to reception of evidence for appellees that they did not authorize representations by another was removed by a charge, re-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

quested by appellant, that if the representations were made they were binding on appellees.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4180–4182; Dec. Dig. ☞1053(3); Trial, Cent. Dig. § 977.]

Appeal from Trial Term, Albany County.

Action by John J. Gallogly and others against Adelbert Whitmore. From a judgment of the Supreme Court for plaintiffs, and an order denying a new trial, defendant appeals. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Ferris, Dannenberg & Ansbacher, of New York City (Jacob Ansbacher, of New York City, of counsel), for appellant.

H. & W. A. Hendrickson, of Albany (Arthur L. Andrews, of Albany, of counsel), for respondents.

LYON, J.   In the year 1908 the Hygienic Ice & Refrigerating Company, of the city of Albany, hereinafter referred to as the Ice Company, entered into an agreement to purchase the property of the Albany Refrigerating & Warehouse Company, and for that purpose proposed to issue its bonds in the sum of $300,000, secured by a mortgage upon the property of both companies. With this in view, and for the purpose of acquiring a fund of $100,000 with which to purchase such bonds to that amount, and to make a payment upon the purchase price, a syndicate was formed and a syndicate agreement executed. This agreement, which was executed by subscribers for stock aggregating $100,000, named three of the subscribers as syndicate managers, designating them as parties of the first part, and the remaining subscribers thereto as parties of the second part. By this agreement, which is set forth in full in the complaint, each subscriber for himself agreed to purchase and take from the syndicate, and the syndicate agreed to deliver to the subscriber, the amount of bonds subscribed for, which the subscriber agreed to pay for in four installments, the last payment to be made January 1, 1910. The syndicate managers were given the sole direction and management and entire conduct of the transactions and business of the syndicate, and full power for the account of the syndicate to borrow by means of notes such sums as might be necessary, not exceeding $100,000, pledging as security therefor bonds not exceeding $133,000, as well as the syndicate agreement, as well as the several payments to be made by the subscribers. The syndicate managers were given power to make calls upon the subscribers for their proportionate amounts of such subscriptions, and the subscribers agreed to pay in cash the sums so called for. In case of default the syndicate managers were given the right to sell the rights and interests of the defaulting subscriber in and under the agreement and bonds. Provision was also made that, in case the loan made by the syndicate managers should not be paid when due, the lender should have the right to sell at public auction any undelivered bonds sufficient to raise the amount unpaid. By such agreement each subscriber guaranteed to any lender of money upon the agreement the payment by such subscriber of his proportionate amount of such loan, and that such obliga-

tion should be enforceable by the lender, without regard to any defense against the Ice or Refrigerating Companies, or any other corporation or person.

The plaintiffs herein, with the exception of Burdick, who prior to the commencement of this action was substituted in the place of one Callan, who had resigned as a syndicate manager, were the original parties of the first part. The defendant was a subscriber for said bonds to the amount of $5,000. The syndicate managers in February, 1909, purchased $100,000 of said bonds from the Ice Company, paying therefor the full value in cash. This money the managers had borrowed from the National Commercial Bank of Albany upon their notes, deposited with the bank, pledging as collateral for the payment of said notes said bonds so purchased. The defendant having neglected to pay all the installments as called for, a tender of $5,000 of the bonds was made to him by one of the parties of the first part October 21, 1910, and the payment of the purchase price demanded, which was refused. Thereupon this action was brought.

The defenses mainly relied upon are that the signature of the defendant to the syndicate agreement was obtained by false representations, chief of which was that the defendant would not be compelled to take the bonds; that the agreement was usurious; that the syndicate managers were themselves liable for any indebtedness to the National Commercial Bank, and the subscribers to the agreement simply sureties; and that the syndicate managers were not entitled to maintain this action. The evidence taken upon the trial related chiefly to the issue as to whether the defendant was induced to sign the agreement with the understanding that he was not to be compelled to take the bonds, and whether the signature of the defendant was obtained through fraud. The jury rendered a verdict against the defendant for the full amount demanded, thereby setting at rest the defense that the defendant's signature was obtained by fraud and false representations. From the judgment entered upon such verdict, and from an order denying the defendant's motion for a new trial, this appeal was taken.

[1] The principal point relied upon by the defendant in his argument before us was that, if any cause of action existed, it was not in favor of the plaintiffs, the syndicate managers, but was in favor of the National Commercial Bank of Albany, the lender of the money and the pledgee of the bonds. At the conclusion of plaintiff's evidence, as well as again at the close of the trial, the defendant moved to dismiss the complaint upon the ground that the syndicate managers were not the proper parties plaintiff, and that they had not the legal capacity to sue. If the plaintiffs had not the legal capacity to sue, that fact appeared upon the face of the complaint, and the objection should have been taken by demurrer or answer.

[2, 3] But, passing this, I think the syndicate managers had legal capacity to sue, and were proper parties plaintiff. This conclusion would seem to follow from the agreement itself. While perhaps it does not contain a statement expressly to that effect, it was apparently the intention of all the parties to the agreement that each subscriber

should pay the amount of his subscription to the syndicate managers, who in turn should pay the same to the lender of the moneys used in purchasing the bonds, taking up bonds to the amount paid, and delivering them to the subscriber. I think the plaintiffs are brought within the provisions of section 449 of the Code of Civil Procedure, and have the right to maintain the action as trustees of an express trust. Had the syndicate managers been in terms made the payees of the subscription, their right to maintain the action would apparently be beyond question. Presbyterian Church v. Beach, 74 N. Y. 72; Dunnigan v. Kathan, 56 Misc. Rep. 103, 106 N. Y. Supp. 1111, affirmed 127 App. Div. 931, 111 N. Y. Supp. 1117. However, in the first paragraph of the agreement each subscriber agrees to purchase and take from the syndicate, and the syndicate agrees to deliver, the amount of bonds paid for. The fourth, fifth, and sixth paragraphs are confirmatory of the powers contended for by the plaintiffs being vested in them. In the case of Davis v. Smith American Organ Co., 117 Mass. 456, the court held that an action could be maintained by an executive committee against a subscriber to a subscription contract to contribute towards any deficiency arising from carrying on an exposition; the manifest purpose of the agreement being to guarantee the committee against any losses they might incur in carrying on a musical festival. To the same effect, Comstock v. Howd, 15 Mich. 237.

In the case at bar the subscribers do not promise to make payments of their subscriptions to the lender of the money with which the bonds have been purchased, but simply (clause seventh):

"Each subscriber hereby severally *guarantees* to the lender of any money upon this agreement the payment of such a proportionate amount of the principal and interest as the amount of his subscription shall bear to the amount of such loan."

By the sixth paragraph of the agreement the lender is given the right, in case any part of the loan and interest shall not be paid when due, to sell at public auction any of the bonds remaining undelivered as may be necessary to raise the amount due. The intention seems to have been to limit the right of action of the lender against the subscribers to the sale of bonds and an action against the subscribers as a guarantor.

[4] While the syndicate agreement gave the plaintiffs the right to pledge the agreement as well as the bonds with the lender of money, the complaint does not allege that the agreement was so pledged, and the answer denies it. While the agreement appears to have been left at the bank with the bonds, no receipt seems to have been taken for it, as was the case as to the bonds when they were returned to the syndicate managers. This would tend to indicate that the agreement was not pledged, but was simply left with the bank as proof, if needed, of the liability of the subscribers as guarantors. However, I do not regard it as material whether the agreement was pledged or not, as it appears that on November 17, 1910, the bonds and syndicate agreement were returned to the syndicate managers, and other collateral substituted. The trial of this action was not had until November, 1914, so plainly the plaintiffs had the possession of the syndicate agree-

ment, free of all lien, at the time of the trial and for practically four years preceding. Whether the agreement was pledged to the bank at the time the action was commenced it is not necessary for us to consider, even if material, as the question was not raised upon the trial, and there is no proof as to when the action was in fact commenced. It is recited on the first page of the record that the action was commenced *on or about* October 25, 1910, the date of the verification of the complaint. It is also recited that the answer was served *on or about* November 14, 1910. As the date of the verification of the answer is June 2, 1911, it is apparent that the expression on or about was intended to be elastic.

[5] Defendant's motion to set aside the verdict as being against the weight of evidence was properly denied. There are no exceptions requiring reversal of the judgment. While there might have been some question as to the reception of the evidence as to what the other members of the syndicate authorized or understood that Mr. Callan, a former member of the syndicate, did, I think that question was removed by the charge of the court in response to defendant's request:

"That if Mr. Callan made the representations and promises that the defendant claims, such promises, agreements, and representations were binding upon the plaintiffs."

The judgment and order should be affirmed, with costs to the respondents. All concur.