SENNER & KAPLAN COMPANY, Respondent, *v*. GERA MILLS, Appellant.

First Department, December 20, 1918.

Sale — principal and agent — action for damages for failure to deliver — purchase through traveling salesman — ratification and acceptance of orders — evidence — erroneous instruction to jury as to duty of seller to notify buyer that it will not accept orders — measure of damages — evidence as to conversation of bank official with defendant's credit man as to plaintiff's financial responsibility.

Where in an action to recover damages which plaintiff claims to have sustained by reason of defendant's alleged failure to perform contracts for the delivery of certain merchandise, it appears that the goods were ordered through defendant's traveling salesman upon a credit of seventy days, and that the custom of the defendant that orders were never deemed accepted until they had been approved by its merchandise and credit departments was well understood by the parties, it was incumbent for the plaintiff to show not only that it had ordered the goods of defendant's salesman, but that defendant had ratified the orders and had accepted the same.

Evidence *held* insufficient to establish the acceptance of the orders. Said orders were not ratified by the delivery of goods to the plaintiff as a matter of accommodation.

The court correctly charged the jury that a firm dealing with a buyer through its salesman is not in law bound to accept the order which the salesman has taken, but committed reversible error in charging that a duty rested upon the seller on receiving the order to notify the buyer within a reasonable time that it would not accept the same, and that upon the failure of the firm to so notify the buyer of its refusal, it would be deemed to have accepted the order.

Where one deals with a person known to be an agent, he is bound to recognize the agent's status, and that he is merely representing another who must ratify his acts before a liability is created.

Had the orders for the goods in question ever ripened into contracts, the measure of damages would be the difference between the contract price and the market value of the same goods on the dates when they should have been delivered.

The price which the buyer paid for such goods at a time long after the date when they should have been delivered cannot be considered as a measure of damages.

It was error to permit the plaintiff to prove by the vice-president of a bank that he had once vouched for plaintiff's financial responsibility and had told defendant's credit man that he considered the plaintiff perfectly good, it not appearing *when* such conversation occurred or that it had the slightest connection with or influence upon defendant's action in refusing to accept plaintiff's orders.

*It seems,* that the question of defendant's good faith was not involved.

APPEAL by the defendant, Gera Mills, from a determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on or about the 7th day of March, 1918, affirming a judgment of the City Court of the City of New York, and also from the original judgment of the City Court entered in the office of the clerk thereof on the 27th day of October, 1917, and from the order entered in said court denying defendant's motion for a new trial.

*Francis M. Scott* of counsel [*Saul S. Myers* with him on the brief], for the appellant.

*George L. Ingraham* of counsel [*Bogart & Bogart,* attorneys], for the respondent.

MERRELL, J.:

This action is brought by the plaintiff, a New York corporation, to recover of the defendant, a New Jersey corporation, damages which plaintiff claims to have sustained by reason of defendant's alleged failure to perform three separate contracts which plaintiff claims to have made with it for the delivery of certain merchandise.

The plaintiff is engaged in the business of manufacturing ladies' dresses. The defendant is a manufacturer of dress goods. The defendant employs a New York firm as its selling agent. The alleged contracts are claimed to have been made between the plaintiff and a traveling salesman representing the defendant corporation.

First Department, December, 1918.        [Vol. 185.

The complaint alleges three separate contracts for the sale of serge, the first of said contracts having been made and entered into on July 31, 1916, for the sale of fifty pieces; one for the sale of twenty-five pieces on or about August 7, 1916; and the third, also for the sale of twenty-five pieces of the serge, claimed to have been made on or about September 18, 1916.   That defendant's traveling salesman called upon plaintiff, solicited and obtained the orders for the goods mentioned upon said several dates, is not disputed.   The goods were ordered upon a credit of seventy days, with certain discounts dependent upon time of payment.

The point at issue between the parties is as to whether or not any of the aforesaid orders were accepted by the defendant, and thereby a contract obligation created to furnish the goods ordered by the plaintiff of defendant's salesman. The orders taken by its traveling salesman were eventually canceled by the defendant, and but a small portion of the goods ordered was ever delivered.

Plaintiff brings this action to recover damages which it claims to have sustained by reason of defendant's failure to deliver the goods ordered.

The defendant's position is, that the contracts set forth in the complaint, and for a breach of which plaintiff complains, were never, in fact, made; that while the orders were received by defendant, it never confirmed nor accepted the same, and consequently the orders never ripened into contracts, and defendant, never having accepted said orders, made no default in refusing to deliver the goods.

Defendant's course of business was to solicit orders for goods, which it manufactured and sold, through traveling salesmen or " drummers."   When orders were taken by these salesmen, they were first submitted to defendant's merchandise department, and it was there determined whether the defendant was in a position to furnish the goods at the prices at which the order was solicited.   When the order was favorably passed upon by the merchandise department, it was then submitted to the credit department, and the question as to the credit and financial responsibility of the purchaser was there passed upon.   Until the order had been approved by the merchandise and credit departments, it was never deemed

accepted by the defendant. This course of business seems to have been a general one and well understood by the parties. The ratification of the order by the credit department, owing to the long term of credit accorded to customers, was a matter of prime importance. It is undisputed in this case that the initial order in question was solicited by defendant's salesman, and through him transmitted to the defendant. There is no evidence, however, that defendant's credit department ever approved of either of the orders, and, therefore, the same were never specifically or in terms accepted.

It is claimed, however, on the part of the plaintiff that defendant, by reason of the delivery of a small portion of the first order of goods, ratified said order and unmistakably manifested an acceptance thereof, and that the third order was accepted in a similar manner. The plaintiff, respondent, bases its contention in this respect upon two deliveries of the goods ordered of defendant, one of eight pieces, delivered August 4 or 5, 1916, on the first order, and the second delivery of five pieces of the serge made on October 6, 1916, claimed by plaintiff to be a part delivery of the bill of goods ordered on September eighteenth. It seems that the first shipment of goods was made by the defendant in response to an insistence upon plaintiff's part that it must have some goods with which to carry on its business, and the same were furnished merely as a matter of accommodation. The shipment, in value, amounted to only about $625. Soon after the shipment was made — indeed, on the next business day after the goods were shipped — defendant's credit man visited plaintiff and insisted upon payment being at once made for said eight pieces of goods shipped, and also for three other small lots which had been delivered prior thereto, but which three shipments had no connection with the alleged contracts here. Thereupon plaintiff paid defendant for the goods so shipped. I do not think that from this transaction any acceptance can be inferred. Indeed, the transaction with reference to these shipments would seem to indicate a refusal on defendant's part to accept plaintiff's orders. The deliveries were certainly not made at the times or under the conditions of the alleged contracts under which plaintiff claims. There is no claim that any part of the second order of goods was ever delivered.

The delivery upon the first order was entirely for the accommodation of the plaintiff, and evidenced no determination to accept the order of July thirty-first. The fact that plaintiff did not insist upon its credit of seventy days, to which it would have been entitled had the order been accepted, but paid for these eight pieces two days after they were delivered, negatives any assumption that defendant intended or that plaintiff understood that such accommodation evidenced an intention to accept that order.

Plaintiff likewise contends that the defendant, by delivering five pieces of the goods on October sixth, evidenced an acceptance of the third order. This delivery was clearly made, like the former one, as an accommodation to the plaintiff, which had repeatedly importuned defendant for the goods in order to continue its business.

On September ninth defendant notified plaintiff that no goods would be delivered under any of the orders, unless a cash payment was made therefor before delivery. Thereupon plaintiff voluntarily gave to defendant its check for $1,000 on account. This $1,000 unquestionably was to cover future shipments, and defendant's insistence on the delivery of said check and plaintiff's willingness to accede thereto clearly indicate that there was no intent or understanding that the orders solicited by defendant's salesman upon a seventy-day credit had ever been accepted. After the delivery of plaintiff's check, four deliveries of goods were made, on September ninth, thirteenth and fifteenth, and on October sixth, amounting in all to $661.79. The last of these deliveries was of the five pieces claimed by plaintiff to have been made upon the third order. After said four deliveries were made, defendant decided to close the account, and paid to the plaintiff the balance of the $1,000 advanced, over and above the purchase price of the goods actually delivered. All of this negatives any assumption that there was an acceptance of the orders taken by defendant's representative or that the same ever ripened into contracts.

The case was tried in the City Court, and a verdict was there rendered in plaintiff's favor and against the defendant for the sum of $1,931.07 damages, upon which judgment was entered in favor of the plaintiff and against defendant, together

with the sum of $94.99 costs, amounting in all to $2,026.06. The defendant appealed from such judgment to the Appellate Term, where the judgment and the order denying a motion for a new trial were affirmed, with costs to the respondent. From such determination of the Appellate Term, affirming the judgment of the City Court, the defendant has appealed, by permission of this court.

It was incumbent in this case, not only for the plaintiff to show that it had ordered the goods of defendant's traveling salesman, but that defendant had ratified the orders and had accepted the same. Until plaintiff established such acceptance, there was no contract relationship proven and no basis for recovery established.

Upon the trial the court correctly charged the jury that they must find, in order to entitle the plaintiff to recover, that there was, in the transactions at issue, a meeting of the minds of the parties. But the court further instructed the jury, I think erroneously, that, as matter of law, there were *prima facie* contracts proven in this case by reason of the procurement of said orders by defendant's traveling salesman and their retention by the defendant without notifying plaintiff within a reasonable time that defendant declined to accept the same. In this connection the trial court charged the jury in the following language: " I charge you, gentlemen, as a matter of law, that there is a presumption, when a salesman offers to sell to a buyer, and the buyer agrees to the terms and conditions which the salesman imposes upon selling his goods, that the order will be carried out by the firm which the salesman represents. But, gentlemen, that presumption is rebuttable. A firm which deals with a buyer through its salesman is not in law bound to accept the order which the salesman has received from the buyer. But, in order to establish the legal relations between the buyer and the seller, the duty is imposed upon the seller, when it receives an order through its salesman, if it does not wish to accept the order, to notify the buyer within a reasonable time that it will not accept the order which has been placed by the buyer. You will see that it might work a great hardship if that were not the law, for if an order is placed by the buyer, the buyer is bound by the order, unless he himself notifies the seller also

First Department, December, 1918.    [Vol. 185.

within a reasonable time, that he desires to cancel the order. And if the seller were not required to notify the buyer of its refusal to deliver, the buyer would be subject to the lowering of prices, or the seller might be benefited by the enlargement of prices. So that the law in its wisdom puts the burden upon the seller to notify the buyer, within a reasonable time, that it will not accept the order of the purchaser."

I think the court was clearly in error in instructing the jury as above quoted. I know of no presumption in law that when a salesman offers goods to a prospective purchaser and the purchaser agrees to take the same upon the terms and conditions offered, the order will be filled by the principal whom the salesman represents. The court correctly charged the jury that a firm dealing with a buyer through its salesman is not in law bound to accept the order which the salesman has taken, but the court incorrectly charged that a duty rested upon the seller on receiving the order to notify the buyer within a reasonable time that it would not accept the same, and that in the failure of the firm to so notify the buyer of its refusal it would be deemed to have accepted the order. I know of no such rule of law. The traveling salesman is, at most, a solicitor of orders, and the prospective purchaser dealing with him understands quite clearly that he is not dealing with the principal, but with an agent whose acts must be accepted and ratified by the principal before they become effective. No burden rested upon the defendant to repudiate the order at any time, and no presumption of acceptance arises because of the seller's failure to notify the purchaser of non-acceptance. To this erroneous charge the defendant duly excepted. The effect of such erroneous instruction to the jury in the instant case was to require a verdict in plaintiff's favor, as it appeared that the orders in question had been given defendant's salesman by plaintiff, and that defendant had not, for a considerable time, definitely notified plaintiff of its non-acceptance of said orders. The respondent does not seriously dispute that the trial court erred in thus instructing the jury.

The law is well settled that where one deals with a person known to be an agent, he is bound to recognize the agent's status and that he is merely representing another who must

ratify his acts before a liability is created. The relation of a traveling salesman to a principal is well understood in the commercial world. His function is to solicit orders which in turn are transmitted to his principal and by him accepted or rejected. Until the orders which have been transmitted are accepted no contract obligation on the part of the principal can be said to exist. (*Van Keuren* v. *Boomer & Boschert Press Co.*, 143 App. Div. 785.)

In the instant case defendant's salesman had no authority to make a contract binding upon the defendant. Until the orders taken by him had passed the merchandise department and the credit department of defendant's business, the plaintiff was in no position to compel the furnishing of the goods ordered. (*Beauty Waists, Inc.*, v. *Traphagen*, 100 Misc. Rep. 464; *National Cash Register Co.* v. *McCann*, 80 id. 165; affd., 160 App. Div. 912.)

It is, therefore, quite clear that the trial court erred in its instructions to the trial jury. Such error was clearly harmful and, as before stated, under the evidence in this case, was tantamount to the direction of a verdict in plaintiff's favor. I think such error of the trial court must result in a reversal of the judgment in this case.

As further reason why the judgment and order appealed from should be reversed, I think the measure of damages claimed to have been suffered by plaintiff was erroneous. Had the orders for the goods in question ever ripened into contracts, the measure of damage would be the difference between the contract price and the market value of the same goods on the dates when they should have been delivered. The plaintiff gave no evidence of such market values, but proved that it some time after acquired similar goods, paying therefor one dollar and thirty-five cents per yard. The circumstances under which plaintiff claims to have purchased the goods were as follows: Plaintiff was under contract with a firm to manufacture and deliver to it certain garments manufactured from the serge which plaintiff claims to have purchased of the defendant. Being unable to procure the cloth from defendant, plaintiff was furnished with serge by its customer for the manufactured garments, and when the cloth had been manufactured the garments were delivered to

the customer. It is quite evident that in such transaction the plaintiff did not purchase the goods at one dollar and thirty-five cents per yard, but that when its customer for the manufactured serge delivered the cloth to the plaintiff, plaintiff was merely charged therefor, and when the manufactured dresses were returned to the customer, plaintiff was credited with the agreed price therefor. Even assuming that plaintiff paid one dollar and thirty-five cents per yard for the serge, it was at a time long after the date when the goods should have been delivered if the contracts had any validity, and the price which plaintiff then paid, therefore, is not properly to be considered as a measure of plaintiff's damages.

Error was also committed by the trial court in permitting plaintiff to prove over defendant's objection, by one Max Radt, vice-president of the Sherman National Bank, that he had once vouched for plaintiff's financial responsibility and had told Mr. Vorck, defendant's credit man, referring to plaintiff's concern, that he considered them perfectly good, that they were very honest boys and would pay every dollar they owed. The purpose of such testimony was evidently to show that defendant had every reason to feel safe, and that in refusing plaintiff credit, defendant had acted arbitrarily. I do not think the question of defendant's good faith is involved, but even if it were, the evidence of the Sherman National Bank's vice-president as to what he, on some occasions, had told defendant's credit man, could have no bearing, as it did not appear *when* such conversation occurred or that it had the slightest connection with or influence upon defendant's action in refusing to accept plaintiff's orders. Such error was harmful, as it tended to confuse the issues, and may have quite likely influenced the jury. (*Hutchins* v. *Hutchins,* 98 N. Y. 56, 65; *Engel* v. *United Traction Co.,* 203 id. 321, 324; *Akin* v. *Lee,* 206 id. 20, 23.)

A full opportunity was accorded plaintiff upon the trial to establish a cause of action, and there was a signal failure on its part to furnish any proof upon which to base a recovery. The circumstances surrounding the business relations of these parties were fully revealed, and plaintiff utterly failed in its effort to establish an acceptance of the orders on defendant's

part.   The undisputed evidence conclusively shows that said orders were none of them ever accepted.

The determination of the Appellate Term and the judgment and order of the City Court should be reversed, with costs, and, in view of the wide latitude accorded to plaintiff, and it having failed to establish a cause of action, plaintiff's complaint should be dismissed, with costs.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concurred.

Determination reversed, with costs, and judgment and order of City Court reversed, with costs, and complaint dismissed, with costs.