HAMPTON COTTON MILLS, Plaintiff, *v.* JACOB B. HERSHFELD, Doing Business in the Name of J. B. HERSHFELD COMPANY, Defendant.

Supreme Court, New York County, October, 1923.

**Sales — order given to salesman must be ratified by principal in order to be binding — equal rights of vendor and vendee — when order given to sales agent is not a contract — verdict for plaintiff set aside and complaint dismissed.**

The rule that when a salesman procures an order the intending buyer must recognize his status and that he merely represents another who must ratify his acts

before a liability is created means that unless and until that has been done the order never can ripen into a contract.

The rights and duties of vendor and vendee are equal, and if it is sought to hold the latter after a repudiation, an acceptance of his order for goods within a reasonable time after receipt is a *sine qua non.*

On September 29, 1919, the defendant gave to a sales agent of plaintiff an order for one hundred cases of ladies' fall underwear. The order, which the defendant wrote out in duplicate on one of his forms in the presence of the salesman to whom he gave one and retained the other, contained among others the following instructions: " Deliver January and February, 1920.—*Charge half each month.*— Charge and hold for shipping instructions — Net 30 days F. O. B. Mill.". The salesman did not transmit to his principal, the plaintiff, the paper he received but instead filled out one of the forms of his firm, the selling agents, and sent it forward; the duplicate original received by him from defendant he filed with the papers of his firm. Defendant, with knowledge that he had not received the two invoices contemplated by said order within the times specified therein and that he had made no payments at such times, offered no objections until more than a year later. Between January, 1920, and August eighteenth of that year, pursuant to defendant's shipping instructions, twenty-four cases were sent to him for which he paid within the thirty days credit limit. After August 18, 1920, all shipping instructions ceased, and on the eighteenth of October following plaintiff wrote to defendant claiming to have a contract for one hundred cases of underwear and requested specifications for the seventy-six undelivered cases so that they could be shipped. In reply defendant wrote that upon looking up the order he found that the goods were to be charged one-half in January and the other half in February and that he did not " want the goods under any circumstances or conditions." Further correspondence ensued and on December 1, 1920, defendant again stated his reasons for refusing to take the balance of the goods. Throughout this action, brought upon the theory that a contract was made which the plaintiff breached in respect of the billing and delivery, but that defendant with knowledge of plaintiff's failure in that regard waived such breaches by his subsequent acts, counsel on both sides referred to the order as the contract, and in some instances the correspondence and shipping directions did likewise. Plaintiff's copy of the order having been called for by defendant it was marked as an exhibit for him and he testified that the words " charge half each month " which were missing therefrom were on the paper when it was given to the salesman. Upon his examination in chief the salesman said that the exhibit was in the same condition as when he received it, and upon cross-examination swore that to the best of his ability the words " charge half each month " were not upon it so far as he could remember. Decision was reserved upon a motion made when plaintiff rested and renewed at the close of the trial to dismiss the complaint upon the grounds *inter alia* that no mutually binding contract had been established, that no evidence of readiness or willingness to perform had been offered and that no market value was shown. Upon granting defendant's motion to set aside a verdict in favor of plaintiff and to dismiss the complaint, *held,* that a mere inspection of the order indicated that it was not a contract since it lacks parties, assent and consideration.

The order to the extent that it was unfulfilled remained executory and within the power of plaintiff to cancel, and the fact that it did not do so was of no consequence.

There being no mutually enforcible agreement ever made, the question of defendant's waiver of the alleged breaches on the part of plaintiff was not involved and it was unnecessary to pass upon the effect of the altered order.

Supreme Court, October, 1923.      [Vol. 121

MOTIONS to dismiss complaint and to set aside verdict.

*Konta, Kirchwey, France & Michael* (*Jerome Michael*, of counsel), for plaintiff.

*Edward Endelman*, for defendant.

ERLANGER, J.   At the times in question plaintiff operated a mill in Hampton, Ga.   Barnes, McGee & McCarthy were sales agents in New York city specializing in underwear and as such sold plaintiff's merchandise.   On September 29, 1919, McCarthy obtained from the defendant an order for 100 cases of ladies' fall underwear, which he (defendant) wrote out in duplicate on one of his forms, using a carbon sheet for the purpose.   McCarthy was present while this was being done.   The defendant retained one and delivered the carbon copy to the said agent.   Both orders were received in evidence.   Plaintiff's Exhibit 1 was produced by the defendant.   Among the instructions contained therein were the following: "Deliver January and February 1920.— *Charge half each month.*— Charge and hold for shipping instructions — Net 30 days F. O. B. Mill."   The defendant called for plaintiff's copy and it was marked "Defendant's Exhibit A."   On the latter exhibit the words "*Charge half each month*" are missing.   The defendant testified they were on the paper when it was given to McCarthy. The latter when examined on the subject said he believed "Defendant's Exhibit A" was in the same condition as it was when he received it.   On cross-examination he said to the best of his ability the words were not upon it so far as he could remember.   That the difference in the two instruments is a substantial one is beyond dispute.   Prepared at the same moment with a carbon sheet, it is strange they should be unlike.   The only solution is, either the defendant added the words after McCarthy left, or they disappeared from the latter's copy after he received it.   It may here be noted that the agency of the concern that took the order was revoked some time in 1919, but just at what time and for what reason does not appear.   What happened in respect of the order was this: McCarthy did not transmit to his principal the paper he received, but instead filled out one of the forms of his firm and sent it forward.   He filed the duplicate original which the defendant delivered to him with the papers of his firm.   Plaintiff attempted to introduce in evidence the order McCarthy sent to it, but on defendant's objection it was excluded.   The trial, however, developed according to the defendant's claim that plaintiff never knew the real terms of the order until more than a year after it was given.   More than that, its president never saw the carbon copy given to McCarthy until after this action was begun, and when he

finally did see it the words " *Charge half each month* " were not upon it. In this situation the goods were never charged nor delivered at the mill as directed. Had they been appropriated, the transaction would have been completed, title vested in the buyer, and all the seller would have been required thereafter to do was to hold the merchandise subject to shipping instructions. By this was meant that the seller was to ship to defendant's customers as and when requested. While it is not manifest just when the defendant acquired knowledge of the alteration, if such was made, he of course at all times knew that he never received the two invoices contemplated by the order within thirty days after January and February, 1920, and that he did not make the payments at such times. Possessed of this knowledge he offered no objection until more than a year later. A course was pursued radically at variance with the terms of purchase. Between January, 1920, and August 18 of that year, the defendant on different occasions sent to the plaintiff shipping instructions requiring it to ship to the former's customers the articles at each time specified. In all twenty-four cases were thus sent out, and each separate shipment paid for within the thirty days' credit limit. Some of the shipments were belated and correspondence ensued. After August eighteenth shipping instructions entirely ceased. On October 18, 1920 (thirteen months after the order was given), the market had declined two dollars a dozen below the price fixed in the order, according to the evidence of plaintiff's president. It was on that date that plaintiff wrote to the defendant claiming to have a contract for 100 cases of underwear, and requested specifications for the 76 undelivered cases so that they could be shipped. The defendant wrote in reply that in looking up the order he found that details and specifications had been given; that the goods were to be charged one-half in January and the other half in February and that he did not " want the goods under any circumstances or conditions." More letters were written, and on December 1, 1920, the defendant again stated his reasons for refusing to take the balance of the goods. This action was thereupon brought on the theory that a contract was made which the plaintiff breached in respect of the billing and delivery, but that the defendant with knowledge of plaintiff's failure in that regard, waived such breaches by his subsequent acts. Throughout the trial counsel for both sides referred to the order as the contract, and in some instances the correspondence and shipping directions did likewise. When the case was rested the defendant moved to dismiss the complaint upon the grounds, among others, that no mutually binding contract was established; that no evidence of readiness, willingness and ability to perform was offered, and that

market value was not shown. This motion was renewed at the close of the trial, and at each time decision was reserved. The case was sent to the jury and plaintiff was awarded a verdict for $1,700. The primary question to be determined is whether a valid agreement was made. Characterizing the order as the contract in the pleadings and other papers, as well as by counsel on the trial, cannot transform the instrument from what it purports to be. A mere inspection of it indicates that it is not a contract, since it lacks parties, assent and consideration. It is not signed by either buyer or seller, and binds neither to do anything under it. That an instrument similar to the one under discussion is in no sense a contract was passed upon in *Brigg* v. *Hilton*, 99 N. Y. 517. Judge Danforth writing for the court said: " It contains no promise nor undertaking. It does not sell the goods nor does it assume to do so. It was not intended to be a contract  * * *  and can at the utmost be considered as the recital of things which had been agreed upon, not as an agreement in itself." In the cited case the order was fully executed and the action was brought to recover the amount due. The defendant asserted a breach of warranty and it was sought to exclude proof to support it on the ground that parol evidence was inadmissible to contradict the writing. This contention the court as shown refused to adopt. While the like question is not involved here, what the court said with regard to the paper itself is pertinent. That the order in the instant case has no validity as a contract is further demonstrated in this, that it was never accepted nor confirmed. The mere taking of it will not alone suffice. The authorities are to the effect that when a salesman procures an order, the buyer is bound to recognize his status and that he merely represents another who must ratify his act before a liability is created. The rule thus declared against the intending purchaser has been held to mean that unless and until that has been done the order can never ripen into a contract. *Senner & Kaplan Co.* v. *Gera Mills*, 185 App. Div. 562; *Van Keuren* v. *Boomer & Boschert Press Co.*, 143 id. 785; *Moses* v. *Tartikoff*, 188 N. Y. Supp. 816; *Thedford* v. *Herbert*, 118 App. Div. 181; *Beauty Waists, Inc.*, v. *Traphagen*, 100 Misc. Rep. 464; *National Cash Register Co.* v. *McCann*, 80 id. 165; affd., 160 App. Div. 912; *White* v. *Kingston Motor Car Co.*, 69 Misc. Rep. 627; *General Silk Importing Co., Inc.*, v. *Smith*, 200 App. Div. 750, 752. In some of the cases cited the orders were taken by traveling salesmen; others were sent in by mail, and in still others the orders were taken by representatives or local salesmen, and in one or more the question of the custom of the seller was discussed; all, however, hold that until acceptance there was no binding obligation. The law against the buyer having thus

been settled, is a different rule to be applied to the seller?  May he sue on the order which was never accepted by him?  If a vendor could sue in such situation he would be given not only a superior right but an advantage over the other.  He could speculate on market conditions.  The result could readily be that he might partially fill the order, and if prices went up cancel, but if the trend of the market was for a lower level, he could claim a contract and hold the buyer for any breach.  Such a rule would seem to be most unjust.  The rights and duties of vendor and vendee are equal, and if it is sought to hold the latter after a repudiation an acceptance of his order within a reasonable time after its receipt is a *sine qua non*.  The plaintiff, however, insists that the cited cases are not applicable, for the reason that McCarthy was in fact a selling agent and, therefore, had implied authority to bind his principal.  The record does not show just what power was conferred on McCarthy's firm.  Plaintiff's witness testified that said firm were commission agents or selling agents for underwear in New York selling its (plaintiff's) line.  McCarthy described his firm as specializing in underwear and that he sold plaintiff's merchandise.  When the defendant referred to McCarthy as being plaintiff's agent, plaintiff's counsel promptly moved to strike out the answer on the ground that the witness was not competent to testify to that fact, and the motion was granted.  We may, however, infer that McCarthy sold the goods of different underwear producers on a commission.  Whether he is designated as a drummer, salesman, agent or representative, his powers were limited to obtaining orders and sending them to his principal for approval.  In this case the transaction depended on the sending of samples which McCarthy's firm did not possess.  "A commission allowed to one who solicits orders, upon sales effected through such orders, does not constitute or prove the solicitor to be an agent of the seller, with authority to make absolute contracts of sale." *McKeige* v. *Carroll*, 120 App. Div. 521.  No attempt was made to establish acceptance of McCarthy's order, unless it is to be held that the delivery of the twenty-four cases to the defendant's customers constituted such as a matter of law.  In my opinion that fact does not warrant the inference.  In a number of the cases above referred to there was a partial delivery of the order followed by a cancellation and it was held that such delivery did not affect the question of contract.  To the extent that the order in the instant case was unfulfilled it remained executory and subject to cancellation by the plaintiff.  That it did not cancel is of no consequence.  That it was within its power so to do is the all-potential test.  There is not the slightest doubt but that plaintiff could have canceled the

remainder of the order at any time. My conclusion is that no mutually enforcible agreement was ever made and, therefore, the question of a waiver is not involved. This finding renders it unnecessary to pass upon the effect of the altered order and the other points presented. The motion to set aside the verdict is granted, and the motion to dismiss the complaint is also granted. Exception in each instance to plaintiff. Thirty days' stay. Sixty days to make a case.

Ordered accordingly.