**HOLLIDGE v. GUSSOW, KAHN & CO., Inc.**

No. 2796.

Circuit Court of Appeals, First Circuit.

Nov. 10, 1933.

Donald J. Hurley, of Boston, Mass. (Kenneth D. Johnson, of Boston, Mass., on the brief), for appellant.

Joseph B. Jacobs, of Boston, Mass. (Jacobs & Jacobs, of Boston, Mass., on the brief), for appellee.

Before WILSON, MORTON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

The appellant was adjudicated a bankrupt on April 12, 1932. On July 29, 1932, he filed an offer of composition which was confirmed on August 9, 1932.

This appeal presents the question as to whether the creditor's claim should be allowed for $940 only, as the referee held, or for $4657.84, as the court below held.

The controlling facts are as follows: Late in 1931, or early in 1932, Kahn, for the creditor, began negotiations with the bankrupt for the publication by the appellee of an illustrated leaflet to advertise the merchandise of the bankrupt's store in New York City. The negotiations resulted in the execution by the bankrupt's duly authorized agent of a document, as follows:

"To Gussow, Kahn & Co. Incorporated
        Advertising

"13 West 36th Street, New York City

                    "January 28, 1932.
"For Kurzman C. Crawford Hollidge 661 Fifth Avenue New York City

"Please enter our order for: 160,000 copies of the Kurzman Courier as per dummy submitted—divided into (8) issues of 20,000 per issue—Editorials to be set in News type with two columns (as per dummy) devoted to water colored illustrations.

"Date of Delivery: One issue for each of the following months of 1932: February, March, April, May, June, September, October and November inclusive.

"Price $940 per issue (including envelopes) $7,520 Complete for eight (8) issues.

"Remarks: Paper stock subject to okay. Envelopes subject to okay. All art work, copy, editorials and proofs subject to okay before each issue goes to press—after original typewritten copy sheets are okayed, any major changes will be subject to an author's correction charge.

"Subject to Approval of your Credit Department.

"Representative ·
        "[Signed]    Charlina Davenport.

"(This order is non-cancellable)"

Thereafter, several conferences were held between Kahn and representatives of the bankrupt for the purpose of getting the leaflet into proper shape for publication. About April 1, 1932, the creditor delivered to the bankrupt's store 20,000 copies of the "Kurzman Chatterer," which were entitled "Volume 1, No. 1, dated March, 1932." This was the first of the eight issues contemplated in the order supra. As bankruptcy came on April 12, no other issues were printed by the creditor. The referee finds that the creditor's profit on the other seven issues, if they had been printed and paid for, would have been $3,717.84. He also finds: "There was no acceptance of the order by Gussow, Kahn & Co., Inc., either in writing or orally."

Learned counsel for the bankrupt has argued, with much ability and ingenuity, that this contract was not an entire contract, but was simply "an offer for several unilateral contracts to be formed upon the delivery of each 20,000 copies of the 'Courier.'" But we think the court below was right in holding the contract an entire one, and that it was effectively accepted. In the light of the finding of conferences between the creditor and the bankrupt as to the form and substance of the leaflet, and the actual furnishing of the first of the eight issues, this finding of no oral or written acceptance must be narrowly construed. It obviously means merely that there was no written or oral *technical* and *formal* acceptance of the order.

The order reads "for 160,000 copies." Part of the consideration having been furnished, there was an acceptance of the order. The undertaking was between business men; legalistic formalities are not to be expected. But when the order for 160,000 copies was made and acted upon by the offeree, we think it clear that both parties regarded themselves as bound to the whole scheme of advertising. The case falls under the doctrine laid down in the Restatement of Contracts, § 45, as follows:

"If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance

of which is conditional on the full consideration being given or tendered within the time stated in the offer, or if no time is stated therein, within a reasonable time." .

If there is any difference (which we need not determine) between the law of New York and the general law of contracts, undoubtedly the question is to be determined by the law of New York. Mendell v. Willyoung, 42 Misc. 210, 85 N. Y. S. 647; Post v. Albert Frank & Co., 75 Misc. 130, 132 N. Y. S. 807; Butchers' Advocate Co. v. Berkof, 94 Misc. 299, 158 N. Y. S. 160, 161. See, also, North Side News Co. v. Cypres, 75 Misc. 129, 132 N. Y. S. 806.

The fact that the bankrupt naturally reserved the right of approving the character and quality of advertising matter of each issue of the leaflet does not prevent the contract from attaching nor from being an entire one. This was merely a term of performance. The contractual relation was to be established before the proposed issues of the Kurzman Courier were submitted to Hollidge for approval; in other words, the submission for approval would be made, and as to the first issue was made, in performance of an existing contract. Compare Allegheny College v. National Chautauqua County Bank of Jamestown, 246 N. Y. 369, 378, 159 N. E. 173, 57 A. L. R. 980, a learned and interesting opinion by Chief Judge Cardozo.

The decree of the District Court is affirmed, with costs to the appellee in this court.

WILSON, Circuit Judge (dissenting).

I regret I am not able to concur in the opinion. The record before this court presents issues which have troubled courts and have been the subject of much refining by the text writers.

The evidence on which the referee made his findings and from which he drew his conclusions was not before the District Court, and, perforce, is not before this court. While the order could have been accepted as an entirety, since the order was for 160,000 copies at a fixed price, or as a severable order composed of distinct units, since the copy, art work, and editorials of each issue had to be approved by the appellant before it went to press, and the price for each issue was also definitely fixed, it was not formally accepted by the appellee as an entire contract by any written or oral communication.

Its acceptance, it is true, either as to the first monthly issue or in its entirety, could have been found from what was said and done at the conferences preliminary to the printing of the first issue and delivery of the first unit; but whether there was a meeting of the minds of the parties in the conferences held before the first publication to treat the contract as an entirety, was a question of fact for the referee. Cecile Costumes, Inc., v. Michel et al. (Sup.) 190 N. Y. S. 509, 511. The referee found that there was no evidence before him to indicate that the bankrupt had any intent of treating the order as an entire contract, and the only definite intention shown on his part was that of accepting the first issue.

It is not a fair inference from the referee's certificate that the conferences held indicated that the creditor accepted the order as an entire contract. Instead, the referee by his conclusion must have found to the contrary, since he allowed the appellee's claim only to the extent of $940. There is nothing in his certificate to indicate that the conferences had anything to do with any publication except the first, and by the express terms of the order, the art work, editorials, and copy of each issue must receive the approval of the appellant before it went to press.

I do not think section 45 of the Restatement of the Law of Contract determines the issue here. It is, of course, true that an acceptance of a unilateral offer can be shown by the acts of the parties; but where the unilateral offer is divisible and the acceptance of the offer as an entirety is not otherwise shown, a supplying by the offeree and an acceptance of one unit by the offeror may be an acceptance only on the unit supplied. White v. Allen Kingston Motor Car Co., 69 Misc. 627, 126 N. Y. S. 150; Murrell v. Graziade (Sup.) 130 N. Y. S. 140; Hampton Cotton Mills v. Hershfeld, 121 Misc. 518, 201 N. Y. S. 556.

The first two cases on which the District Court relied in reversing the findings and conclusion of the referee, which are also cited as supporting the opinion, were cases where the order, though susceptible of division, being made up of monthly insertions of advertising matter, was held to be for an entire period for a definite sum and the publication of one insertion was held to be an acceptance of the entire order and created an irrevocable contract. In the case of Butchers' Advocate Co. v. Berkof et al., 94 Misc. 299, 158 N. Y. S. 160, 161, however, also cited in the memorandum of the District Court and in the opinion, as sustaining the views there expressed, it was held that as there was no acceptance of the entire order by the creditor, and as the offer was to pay so much per insertion, the order

could be canceled at any time. The same principle was laid down in White v. Allen Kingston Motor Car Co., supra; Murrell v. Graziade, supra; Hampton Cotton Mills v. Hershfeld, supra.

The requirement in this case that each issue must receive the approval of the appellant as to copy, editorials, and art work, may have rendered the promise of the appellant a conditional one as to each issue, and a condition precedent to any obligation to accept each issue on his part, and goes far to establish his claim that the conferences related only to the first issue, as the referee found.

Without the evidence on which the referee made his findings, it does not appear that his conclusions were drawn solely from admitted facts. In such cases his findings should stand, unless it appears they were clearly wrong. Free et al. v. Shapiro (C. C. A.) 5 F.(2d) 578, 579; In re Barnet Mfg. Co. (D. C.) 11 F.(2d) 873.