THE · PRESBYTERIAN SOCIETY OF KNOXBORO, Appellant,
v. JACOB BEACH, Respondent.

Defendant signed a subscription paper, by which the subscribers agreed
to pay the sums set opposite their names to a treasurer to be appointed
by them, for the purpose of building "a Presbyterian church edifice."
A treasurer was duly appointed, and at meetings, at which defendant
was present and expressed no dissent, a religious society was organized,
trustees elected, committees appointed, and the work commenced and
carried through with defendant's knowledge and in reliance upon the sub-
scriptions.   In subsequent proceedings, by the members of the society
under the act of 1813 (chap. 60, R. L. of 1813), plaintiff was incorporated.
*Held*, that there was a good consideration for the undertaking of the
defendant ; that he was liable upon his subscription; and that the liability
could be enforced by the treasurer appointed by the subscribers ; but
that in order to enable plaintiff to enforce it, it must be made to appear
that when the paper was in circulation for subscriptions, or afterward
when action was being taken upon it, it was the understanding and pur-
pose that the edifice should become part of the temporalities of an incor-
porated Presbyterian religious society ; that the designation of the
church edifice as "Presbyterian" in the subscription paper did not
alone show such purpose, as the edifice might be used and controlled by
Presbyterians without the formation of a religious corporation.
*Pres. Soc. of Knoxboro* v. *Beach* (8 Hun, 644), reversed.

(Argued May 24, 1878 ; decided June 4, 1878.)

APPEAL from judgment of the General Term of the
Supreme Court, in the fourth judicial department, affirming
a judgment in favor of defendant, entered upon an order
dismissing plaintiff's complaint, and affirming an order deny-
ing a motion for a new trial.   (Mem. of decision below, 8
Hun, 644.)

This action was brought to enforce a subscription.

Defendant, with others, signed the following subscription
paper, the sum of $250 being set opposite his name :

"We, the undersigned subscribers, believing that the erection of a church edifice in the village of Knoxboro is requisite for the promotion of both the convenience and benefit of the inhabitants of said village and vicinity, hereby agree to pay the sums set opposite our respective names to a treasurer, hereafter to be appointed by us, for the purpose of building a Presbyterian church edifice in said village of Knoxboro, payable one-quarter on each of the following days, viz.: 1st April, 1st July, 1st October, 1872, and 1st January, 1873 ; provided the sum of $6,000 is subscribed ; otherwise our subscriptions are not binding."

The facts appear sufficiently in the opinion.

The court ordered a verdict for plaintiff, reserving the questions of law for further argument. After argument, the court dismissed the complaint, to which plaintiff duly excepted.

*John H. Knox*, for appellant. The validity of defendant's subscription, and the right of plaintiff to sue for it, was not affected by the fact that plaintiff was not incorporated when it was made. (3 R. S., 282, § 4; 3 Edms. Stat. at Large, 690; *Refd. Church* v. *Brown*, 24 How., 88; *Barnes* v. *Perine*, 9 Barb., 206; 12 N. Y., 18; *The Rector, etc.*, v. *Crawford*, 43 id., 476; *Ham. and D. P. R. Co.* v. *Rice*, 7 Barb., 158, 163 ; *Trustees, etc.*, v. *Allen*, 14 Mass., 172; *Stanton* v. *Wilson*, 2 Hill, 153; *Refd. Prot. D. Ch.* v. *Brown*, 28 How., 88.) Defendant waived any objection that he did not intend to donate his money for the use of plaintiff by permitting the society to organize and proceed with the building without objection. (*Bryant* v. *Goodnow*, 5 Pick., 228; *Trustees, etc.*, v. *Allen*, 14 Mass., 176; *Refd. D. Ch.* v. *Brown*, 29 Barb., 337; *Barnes* v. *Perine*, 12 N. Y., 18; *Snell* v. *Trustees, etc.*, 58 Ill., 290; 16 N. Y., 463.) There was a valid and sufficient consideration to support the subscription. (29 Barb., 335; 24 How., 76; 1 Pars. on Con. [1st ed.], 378, § 10; *Barnes* v. *Perine*, 12 N. Y., 18; *Ham. and D. Plank Road Co.* v. *Rice*, 7 Barb., 165; *Trustees, etc.*, v. *Allen*, 14

Mass., 172, 176; *Trustees, etc.,* v. *Gilbert,* 2 Pick., 579; 12 id., 541; *Amherst Acad.* v. *Cowles,* 6 id., 427; 7 J. R., 112; *L'Amereux* v. *Gould,* 3 Seld., 349; *Howes* v. *Dana,* 12 Mass., 192; *McAuley* v. *Billinger,* 20 J. R., 89; 1 N. Y., 581; *Rich. Un. Sem.* v. *McDonald,* 34 id., 379, 381; Pars. on Contracts [1st ed.], vol. 1, § 10, p. 378; *Bryant* v. *Goodwin,* 5 Pick., 228; *Warren* v. *Sears,* 19 id., 73; *Robertson* v. *Marsh,* 3 Scam., 198; *Mason* v. *Shippord,* 2 Hump., 335; *Univ. of Vermont* v. *Buell,* 2 Vt., 48; *Canal Fund* v. *Perry,* 5 Ham., 58; *Barnes* v. *Perry,* 9 Barb., 202; 12 N. Y., 18; *Farmington Acad.* v. *Allen,* 14 Mass., 172; *Whitestown* v. *Stone,* 7 J. R., 112; *Steward* v. *Ham. Col.,* 1 Comst., 581; *Ladies Coll. Inst.* v. *French,* 16 Gray [1860]; *Williams Coll.* v. *Danforth,* 12 Pick., 541; *Thompson* v. *Page,* 1 Met., 565.)

*W. H. Bright,* for respondent. The subscription paper cannot be so construed as to create an obligation from defendant to plaintiff. (*Van Rensselaer* v. *Aikin,* 44 N. Y., 126.) The confidential and conditional subscriptions were a fraud upon, and released defendant. (*Trustees, etc.,* v. *Stewart,* 2 Den., 403, 418, 419; *N. Y. Exchange Co.* v. *De Wolf,* 31 N. Y., 273; *Chesbrough* v. *Wright,* 51 id., 662; 1 Pars. on Con. [6th ed.], 454.) The fact that a treasurer was appointed in a manner different from that contemplated is a good defense to this action. (*O. and W. Col. Inst.* v. *Blakeman,* 48 N. Y., 663; *O. and W. Col. Inst.* v. *Duúnery,* 41 id., 620.) The failure of the persons who procured defendant's subscription to do as they promised at the time was a good defense to this action. (*Ins. Co.* v. *Bruger,* 10 Hun, 56.) The defendant's promise is wholly without consideration to support it, and cannot be enforced. (*Wilson* v. *Bapt. Edu. Soc.,* 10 Barb., 308; *Trustees of Ham. Coll.* v. *Stewart,* 1 Comst., 581; 2 Den., 403; *Barnes* v. *Perrine,* 2 Kern., 18; Pars. on Contracts [6th ed.], vol. 1, 453; *M. E. Church* v. *Kendall,* 121 Mass., 528; *Academy* v. *Gilbert,* 2 Pick., 579; *Van Rensselaer* v. *Aiken,* 44 N. Y., 126.) Where

one promise is relied on as the consideration of another promise, the promises must be concurrent and mutually obligatory at the same time. (*U. and S. R. R.* v. *Brinkerhoff*, 21 Wend., 139; *Tucker* v. *Wood*, 12 J. R., 190; *Keep* v. *Goodrich*, id., 397.) This was not a case of mutual promises, and for this reason defendant's promise cannot be enforced. (1 Comstock, 581; 1 Caines, 534; 1 Chitty Pl., 296; 10 Barb., 308; 21 Wend., 139.)

FOLGER, J. From the manner in which the case was disposed of at the circuit, it is not easy to determine just what are the facts upon which it appears before this court. This difficulty seems to have pressed upon the learned General Term also. But it took a view of that matter different from that which we adopt, and this difference it is which has led that court to one result and this to a different one. A verdict was directed at circuit for the plaintiff. There was no exception made to this by the defendant, and, of course, not by the plaintiff. This was done after offers of testimony by the plaintiff, which were put aside, as we read the record, not on the ground that it was not relevant and competent, but that even if it was preponderating, it would not alter the legal aspect of the case. We must presume that the plaintiff could have produced all of the testimony which it proposed to, and that it would have been effectual to have established all that it essayed to. We are then to assume that all the disputed questions of fact were found, or taken as found, for the plaintiff, and properly so found. And this is so, notwithstanding the learned circuit judge afterwards, from expressions in the opinion given by him, seems to have concluded that there was no sufficient proof by the plaintiff of certain material issues of which it held the affirmative. It would not be a just way to refuse to hear proof, on the ground that there was only a question of law, the determination of which could not be aided by evidence, and then to base that determination upon the absence of facts which the proffered evidence might have

established., The case comes to us as if a nonsuit had been ordered, after all the evidence had been heard, both that which was actually received, and that which was offered by the plaintiff. And we are bound to take, as made out therefrom, everything in favor of the plaintiff which the jury, in a fair consideration of the evidence, could have found or inferred. This establishes, for the purposes of a review of the subsequent judgment, that the defendant subscribed to the subscription paper ; that all of its terms and conditions were fully met by obtaining sufficient *bona fide* subscriptions to the amount named in it, with no conditions attached to them other than those in the paper itself ; that a treasurer was duly appointed by the subscribers to that paper, to whom the payment of the sums signed was to be made ; that at meetings, at which the defendant was present and expressed no dissent, a religious society was organized, the trustees of it elected and qualified to serve, committees appointed on plans, on site, and on building ; that the defendant was cognizant of the commencement of the work, the progress and completion of it, and did not revoke his subscription ; and that the work was begun and carried on in reliance upon the subscriptions, including that of the defendant, and with the intent and to the end of carrying out the purpose expressed in the subscription paper.

If this was so, there was clearly a consideration established for the undertaking of the defendant, and he is bound to some party to perform it.

There is left, then, only the question of who is that party ? Clearly the person who was selected by the subscribers, to be the treasurer spoken of in the paper, was the payee, and was a party who could have and demand of the defendant the payment of his subscription. It is not needed that that person should himself have done the work, or incurred any obligation on account of it. The designation given to him shows that he was to be a representative of the whole body of subscribers, and was to be for them the receiver, collector, custodian and disburser of the funds. The subscribers were

expected to carry out the common, ultimate object — that is, the putting up of the building, by other agents or representatives; such as the committees above designated. And the acts done by those committees, in reliance upon the subscriptions made, formed the consideration for, and made binding, the promises, which the person who was treasurer had a legal right to enforce.

But it is still to be made out that the defendant had any privity with this plaintiff by which it can enforce his subscription against him. It is clear that the plaintiff is not a party to the subscription paper by its terms; and cannot plant itself upon that alone. It is said that the act of 1813 (3 R. L., p. 282, § 4), wherein it enables religious societies to avail themselves, after their incorporation, of property in the hands of natural persons, put there for their use while they were yet in embryo, aids the plaintiff here. But it is not yet established that when the defendant made this subscription this plaintiff was in contemplation by the subscribers, or that there was a purpose then entertained among them of the subsequent creation of a religious corporation, the one which the plaintiff now is, or any like unto it. The purpose, so far as is shown by the paper, was to build a " Presbyterian church edifice." The material thing, the edifice, could not, of itself, have any quality of a Presbyterian; so that the phrase must mean an edifice for religious worship after the Presbyterian manner and formulas, conducted by ministers in harmony with the creed and discipline of that ecclesiastical body. If it were necessary to effect that, that a religious corporation should be formed under the act of 1813, it might be said, perhaps, that this subscription paper indicated a purpose, on the part of the signers to it, that that should be done. But the edifice, when erected, might be controlled by Presbyterians, preached in only by ministers of their faith, and frequented mostly by members of that sect, and held and treated as built especially for their convenience or needs, without the formation of a religious corporation in law, of that faith, being a prerequisite thereto. Such was the fact in

that community.   The Presbyterians owned an interest in the
Union church, in common with the Methodists, and controlled
it for religious meetings after their own way on alternate
Sabbath evenings.   So far, at such times, it was a " Presby-
terian church edifice."   It was probably erected with that
end in view.   But that did not foreshadow a purpose of form-
ing a Presbyterian religious incorporation there, in accord-
ance with the statute, to take and own an interest in that
building.   Men and women are Presbyterians in creed, feel-
ings and observances, when brought together in unorganized
bodies by common sympathies, associations and beliefs ; or
standing alone therewith ; as well as when members of a statu-
tory incorporated organization, or a formal ecclesiastical
body.   So that the erection of a church edifice may be con-
templated and proposed for the use of them in such condi-
tion, and may well be styled by their sectarian name, without
necessarily indicating a purpose that the legal organization
shall come after the putting up of the building.   So that we
are not able to say, as matter of law, that there was a pur-
pose or understanding among the subscribers to this paper,
that there would be a religious corporation created according
to the statute, and an ecclesiastical body connected therewith.
Nor are· we able to say, as a matter of law, to the contrary.
But it is not impossible that in the consideration of the proofs
which were made at the circuit, and such other as might have
been adduced, had due scope been given to the plaintiff, the
jury might have found that there did exist, at the time when
this paper was in circulation for subscriptions, or afterwards
when action was taken upon it, an understanding and purpose
that the edifice to be erected should become part of the tem-
poralities of a religious corporation, formed in accordance
with the statute, as a Presbyterian religious society, to
which, by virtue of the fourth section of the act of 1813, the
subscription paper, the moneys and rights of property rep-
resented by it should belong.   In dealing with this question,
the jury would have had the power to consider all that took
place from the time of the first signature until the actual

organization of the plaintiff, all the meetings, all the appointments of committees, all the acts of those committees, and all the reliance had by them upon this paper, and the signatures of names and amounts to it; provided these things were in the whole or great degree brought to the co-operation of the defendant, or to his assenting knowledge. If there was fairly proven thereby, directly or by legitimate inference, that there did exist such design and purpose, we think that the plaintiff ought to recover. We think it was error not to have had that question of fact definitely settled *pro* or *con;* and that it may be so settled by a tribunal of fact. We reverse the judgment, and order a new trial, etc.

It will not escape notice that we have, from the manner in which this case has left the circuit and come here, felt bound to assume, as established in favor of the plaintiff, some things which were contested on the trial by the defendant. We are not to be understood as intimating how they should be found or decided upon a new trial.

For the plaintiff to recover, it must fairly appear, from all the facts and circumstances of the case, that the defendant expected when he signed the paper, or at some subsequent time while he still adhered to that act, and joined with other like actors in promoting the common object, that he meant that the result should be for the particular advantage of a religious incorporation, which has since taken legal shape in the organization of the plaintiff. And it must also appear that the plaintiff, or its agents, or the committees formed at or in contemplation of its organization, have entered upon the work proposed and carried it on in reliance upon the subscription of the defendant.

All concur, except ALLEN, J., absent.

Judgment reversed.