ALLEGHENY COLLEGE, Appellant, *v.* THE NATIONAL CHAUTAUQUA COUNTY BANK OF JAMESTOWN, as Executor of MARY Y. JOHNSTON, Deceased, Respondent.

Gift — charitable subscriptions — contract — consideration — bilateral agreement may exist though one promise be implied — duty to perpetuate name of founder of memorial sufficient consideration for subscription — acceptance of payment on account of subscription — improper dismissal of complaint in action to recover balance where subscription directed that fund should be known by a certain name and proceeds used for a certain purpose.

1. A bilateral agreement may exist though one of the mutual promises be a promise " implied in fact," an inference from conduct as opposed to an inference from words.

2. The duty assumed by a college to perpetuate the name of the founder of a memorial is sufficient in itself to give validity to a

24

subscription within the rules that define consideration for a promise of that order. When the promisee subjected itself to such a duty at the implied request of the promisor, the result was the creation of a bilateral ag eement, a promise on the one side and on the other a return promise, made, by implication, but expressing an obligation that had been exacted as a condition of the payment.

.3. The complaint was improperly dismissed, therefore, in an action by a college to recover the unpaid balance of a subscription made on condition that the gift should be known " as the Mary Yates Johnston Memorial Fund " and the proceeds used " to educate students preparing for the ministry," a part of which subscription was paid by the donor and accepted by the college, after which the donor gave notice in writing that she repudiated the promise.

*Allegheny College* v. *Nat. Chautauqua County Bank*, 219 App. Div. 852, reversed.

(Argued October 18, 1927; decided November 22, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 13, 1927, unanimously affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at an Equity Term.

*Clarence G. Pickard, C. A. Pickard* and *Arthur L. Bates* for appellant. The subscription paper executed by Mary Yates Johnston was founded upon a legal consideration. (*Barnes* v. *Perine*, 12 N. Y. 18; *Matter of Conger*, 113 Misc. Rep. 129; *Eliassof* v. *DeWandelaer*, 30 App. Div. 155; *Coyne* v. *Weaver*, 84 N. Y. 386; *Ga Nun* v. *Palmer*, 216 N. Y. 603; *Roberts* v. *Cobb*, 103 N. Y. 600; *Mechanicville War Chest, Inc.,* v. *Butterfield*, 110 Misc. Rep. 257; *Richmondville Union Seminary* v. *McDonald*, 34 N. Y. 379; *Genesee College* v. *Dodge*, 26 N. Y. 213; *Locke* v. *Taylor*, 161 App. Div. 44.)

*Robert H. Jackson, Harry R. Lewis* and *Benjamin S. Dean* for respondent. The instrument is only a promise to make a gift or subscription and lacks consideration which the law of New York requires for actionability. (*Hamilton College* v. *Stewart*, 1 N. Y. 581; *Presbyterian Church* v. *Cooper*, 112 N. Y. 517; *Twenty-third St. Church*

v. *Cornell,* 117 N. Y. 601; *Holmes* v. *Roper,* 141 N. Y. 64; *Dougherty* v. *Salt,* 227 N. Y. 202; *Assets Realization Co.* v. *Howard,* 211 N. Y. 430; *Tucker* v. *Alexanderoff,* 183 U. S. 424; *Cottage Church* v. *Kendall,* 121 Mass. 528; *Montpelier Seminary* v. *Smith,* 69 Vt. 382; *New Jersey Hospital* v. *Wright,* 95 N. J. L. 462; *U. of Penn.* v. *Coxe,* 277 Penn. St. 512; *Galt* v. *Swain,* 9 Geattan [Va.], 633.)

CARDOZO, Ch. J.   The plaintiff, Allegheny College, is an institution of liberal learning at Meadville, Pennsylvania.   In June 1921, a " drive " was in progress to secure for it an additional endowment of $1,250,000.   An appeal to contribute to this fund was made to Mary Yates Johnston of Jamestown, New York.   In response thereto, she signed and delivered on June 15, 1921, the following writing:

" Estate Pledge,

"" Allegheny College Second Century Endowment

"JAMESTOWN, N. Y., *June* 15, 1921.

" In consideration of my interest in Christian Education, and in consideration of others subscribing, I hereby subscribe and will pay to the order of the Treasurer of Allegheny College, Meadville, Pennsylvania, the sum of Five Thousand Dollars; $5,000.

" This obligation shall become due thirty days after my death, and I hereby instruct my Executor, or Administrator, to pay the same out of my estate.   This pledge shall bear interest at the rate of . . . . per cent per annum, payable annually, from . . . . till paid.   The proceeds of this obligation shall be added to the Endowment of said Institution, or expended in accordance with instructions on reverse side of this pledge.

" Name          MARY YATES JOHNSTON,

" Address                    306 East 6th Street,

                                    " Jamestown, N. Y.

" DAYTON E. McCLAIN     Witness

" T. R. COURTIS            Witness

          " to authentic signature."

On the reverse side of the writing is the following indorsement: " In loving memory this gift shall be known as the Mary Yates Johnston Memorial Fund, the proceeds from which shall be used to educate students preparing for the Ministry, either in the United States or in the Foreign Field.

" This pledge shall be valid only on the condition that the provisions of my Will, now extant, shall be first met.
.." MARY YATES JOHNSTON."

The subscription was not payable by its terms until thirty days after the death of the promisor. The sum of $1,000 was paid, however, upon account in December, 1923, while the promisor was alive. The college set the money aside to be held as a scholarship fund for the benefit of students preparing for the ministry. Later, in July, 1924, the promisor gave notice to the college that she repudiated the promise. Upon the expiration of thirty days following her death, this action was brought against the executor of her will to recover the unpaid balance.

The law of charitable subscriptions has been a prolific source of controversy in this State and elsewhere. We have held that a promise of that order is unenforcible like any other if made without consideration (*Hamilton College* v. *Stewart*, 1 N. Y. 581; *Presb. Church* v. *Cooper*, 112 N. Y. 517; *23rd St. Bap. Church* v. *Cornell*, 117 N. Y. 601). On the other hand, though professing to apply to such subscriptions the general law of contract, we have found consideration present where the general law of contract, at least as then declared, would have said that it was absent (*Barnes* v. *Perine*, 12 N. Y. 18; *Presb. Soc.* v. *Beach*, 74 N. Y. 72; *Keuka College* v. *Ray*, 167 N. Y. 96; cf. *Eastern States League* v. *Vail*, 97 Vt. 495, 508, and cases cited; *Y. M. C. A.* v. *Estill*, 140 Ga. 291; *Amherest Academy* v. *Cowls*, 6 Pick. 427; *Ladies Collegiate Inst.* v. *French*, 16 Gray, 196; *Martin* v. *Meles*, 179 Mass.

114; *Robinson* v. *Nutt*, 185 Mass. 345; *U. of Pa.* v. *Coxe*, 277 Penn. St. 512; Williston, Contracts, § 116).

A classic form of statement identifies consideration with detriment to the promisee sustained by virtue of the promise (*Hamer* v. *Sidway*, 124 N. Y. 538; Anson, Contracts [Corbin's ed.], p. 116; 8 Holdsworth, History of English Law, 10). So compendious a formula is little more than a half truth. There is need of many a supplementary gloss before the outline can be so filled in as to depict the classic doctrine. " The promise and the consideration must purport to be the motive each for the other, in whole or at least in part. It is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting" (*Wisc. & Mich. Ry. Co.* v. *Powers*, 191 U. S. 379, 386; *McGovern* v. *City of N. Y.*, 234 N. Y. 377, 389; *Walton Water Co.* v. *Village of Walton*, 238 N. Y. 46, 51; 1 Williston, Contracts, § 139; Langdell, Summary of the Law of Contracts, pp. 82–88). If A promises B to make him a gift, consideration may be lacking, though B has renounced other opportunities for betterment in the faith that the promise will be kept.

The half truths of one generation tend at times to perpetuate themselves in the law as the whole truths of another, when constant repetition brings it about that qualifications, taken once for granted, are disregarded or forgotten. The doctrine of consideration has not escaped the common lot. As far back as 1881, Judge HOLMES in his lectures on the Common Law (p. 292), separated the detriment which is merely a consequence of the promise from the detriment which is in truth the motive or inducement, and yet added that the courts " have gone far in obliterating this distinction." The tendency toward effacement has not lessened with the years. On the contrary, there has grown up of recent days a doctrine that a substitute for consideration or an exception to its ordinary requirements can be found in

what is styled " a promissory estoppel " (Williston, Contracts, §§ 139, 116). Whether the exception has made its way in this State to such an extent as to permit us to say that the general law of consideration has been modified accordingly, we do not now attempt to say. Cases such as *Siegel* v. *Spear & Co.* (234 N. Y. 479) and *DeCicco* v. *Schweizer* (221 N. Y. 431) may be signposts on the road. Certain, at least, it is that we have adopted the doctrine of promissory estoppel as the equivalent of consideration in connection with our law of charitable subscriptions. So long as those decisions stand, the question is not merely whether the enforcement of a charitable subscription can be squared with the doctrine of consideration in all its ancient rigor. The question may also be whether it can be squared with the doctrine of consideration as qualified by the doctrine of promissory estoppel.

We have said that the cases in this State have recognized this exception, if exception it is thought to be. Thus, in *Barnes* v. *Perine* (12 N. Y. 18) the subscription was made without request, express or implied, that the church do anything on the faith of it. Later, the church did incur expense to the knowledge of the promisor, and in the reasonable belief that the promise would be kept. We held the promise binding, though consideration there was none except upon the theory of a promissory estoppel. In *Presbyterian Society* v. *Beach* (74 N. Y. 72) a situation substantially the same became the basis for a like ruling. So in *Roberts* v. *Cobb* (103 N. Y. 600) and *Keuka College* v. *Ray* (167 N. Y. 96) the moulds of consideration as fixed by the old doctrine were subjected to a like expansion. Very likely, conceptions of public policy have shaped, more or less subconsciously, the rulings thus made. Judges have been affected by the thought that " defences of that character " are " breaches of faith toward the public, and especially toward those engaged in the same enterprise, and an unwarrantable disappointment of the reasonable expectations of those interested " (W. F.

ALLEN, J., in *Barnes* v. *Perine, supra,* page 24; and cf. *Eastern States League* v. *Vail,* 97 Vt. 495, 505, and cases there cited). The result speaks for itself irrespective of the motive. Decisions which have stood so long, and which are supported by so many considerations of public policy and reason, will not be overruled to save the symmetry of a concept which itself came into our law, not so much from any reasoned conviction of its justice, as from historical accidents of practice and procedure (8 Holdsworth, History of English Law, 7 *et seq.*). The concept survives as one of the distinctive features of our legal system. We have no thought to suggest that it is obsolete or on the way to be abandoned. As in the case of other concepts, however, the pressure of exceptions has led to irregularities of form.

It is in this background of precedent that we are to view the problem now before us. The background helps to an understanding of the implications inherent in subscription and acceptance. This is so though we may find in the end that without recourse to the innovation of promissory estoppel the transaction can be fitted within the mould of consideration as established by tradition.

The promisor wished to have a memorial to perpetuate her name. She imposed a condition that the " gift " should " be known as the Mary Yates Johnston Memorial Fund." The moment that the college accepted $1,000 as a payment on account, there was an assumption of a duty to do whatever acts were customary or reasonably necessary to maintain the memorial fairly and justly in the spirit of its creation. The college could not accept the money, and hold itself free thereafter from personal responsibility to give effect to the condition (*Dinan* v. *Coneys,* 143 N. Y. 544, 547; *Brown* v. *Knapp,* 79 N. Y. 136; *Gridley* v. *Gridley,* 24 N. Y. 130; *Grossman* v. *Schenker,* 206 N. Y. 466, 469; 1 Williston, Contracts, §§ 90, 370). More is involved in the receipt of such a fund than a mere acceptance of money to be held to a corporate use

(cf. *Martin* v. *Meles*, 179 Mass. 114, citing *Johnson* v. *Otterbein University*, 41 Ohio St. 527, 531, and *Presb. Church* v. *Cooper*, 112 N. Y. 517). The purpose of the founder would be unfairly thwarted or at least inadequately served if the college failed to communicate to the world, or in any event to applicants for the scholarship, the title of the memorial. By implication it undertook, when it accepted a portion of the " gift," that in its circulars of information and in other customary ways, when making announcement of this scholarship, it would couple with the announcement the name of the donor. The donor was not at liberty to gain the benefit of such an undertaking upon the payment of a part and disappoint the expectation that there would be payment of the residue. If the college had stated after receiving $1,000 upon account of the subscription that it would apply the money to the prescribed use, but that in its circulars of information and when responding to prospective applicants it would deal with the fund as an anonymous donation, there is little doubt that the subscriber would have been at liberty to treat this statement as the repudiation of a duty impliedly assumed, a repudiation justifying a refusal to make payments in the future. Obligation in such circumstances is correlative and mutual. A case much in point is *N. J. Hospital* v. *Wright* (95 N. J. L. 462, 464), where a subscription for the maintenance of a bed in a hospital was held to be enforcible by virtue of an implied promise by the hospital that the bed should be maintained in the name of the subscriber (cf. *Bd. of Foreign Missions* v. *Smith*, 209 Penn. St. 361). A parallel situation might arise upon the endowment of a chair or a fellowship in a university by the aid of annual payments with the condition that it should commemorate the name of the founder or that of a member of his family. The university would fail to live up to the fair meaning of its promise if it were to publish in its circulars of information and elsewhere the

existence of a chair or a fellowship in the prescribed subject, and omit the benefactor's name.   A duty to act in ways beneficial to the promisor and beyond the application of the fund to the mere uses of the trust would be cast upon the promisee by the acceptance of the money.   We do not need to measure the extent either of benefit to the promisor or of detriment to the promisee implicit in this duty.   " If a person chooses to make an extravagant promise for an inadequate consideration it is his own affair " (8 Holdsworth, History of English Law, p. 17).   It was long ago said that " when a thing is to be done by the plaintiff, be it never so small, this is a sufficient consideration to ground an action " (*Sturlyn* v. *Albany*, 1587, Cro. Eliz. 67, quoted by Holdsworth, *supra*; cf. *Walton Water Co.* v. *Village of Walton*, 238 N. Y. 46, 51).   The longing for posthumous remembrance is an emotion not so weak as to justify us in saying that its gratification is a negligible good.

We think the duty assumed by the plaintiff to perpetuate the name of the founder of the memorial is sufficient in itself to give validity to the subscription within the rules that define consideration for a promise of that order.   When the promisee subjected itself to such a duty at the implied request of the promisor, the result was the creation of a bilateral agreement (Williston, Contracts, §§ 60-a, 68, 90, 370; *Brown* v. *Knapp, supra;* *Grossman* v. *Schenker, supra; Williams College* v. *Danforth*, 12 Pick. 541, 544; *Ladies Collegiate Inst.* v. *French*, 16 Gray, 196, 200).   There was a promise on the one side and on the other a return promise, made, it is true, by implication, but expressing an obligation that had been exacted as a condition of the payment.   A bilateral agreement may exist though one of the mutual promises be a promise " implied in fact," an inference from conduct as opposed to an inference from words (Williston, Contracts, §§ 90, 22-a; *Pettibone* v. *Moore*, 75 Hun, 461, 464). We think the fair inference to be drawn from the

acceptance of a payment on account of the subscription is a promise by the college to do what may be necessary on its part to make the scholarship effective. The plan conceived by the subscriber will be mutilated and distorted unless the sum to be accepted is adequate to the end in view. Moreover, the time to affix her name to the memorial will not arrive until the entire fund has been collected. The college may thus thwart the purpose of the payment on account if at liberty to reject a tender of the residue. It is no answer to say that a duty would then arise to make restitution of the money. If such a duty may be imposed, the only reason for its existence must be that there is then a failure of " consideration." To say that there is a failure of consideration is to concede that a consideration has been promised since otherwise it could not fail. No doubt there are times and situations in which limitations laid upon a promisee in connection with the use of what is paid by a subscriber lack the quality of a consideration, and are to be classed merely as conditions (Williston, Contracts, § 112; Page, Contracts, § 523). " It is often difficult to determine whether words of condition in a promise indicate a request for consideration or state a mere condition in a gratuitous promise. An aid, though not a conclusive test in determining which construction of the promise is more reasonable is an inquiry whether the happening of the condition will be a benefit to the promisor. If so, it is a fair inference that the happening was requested as a consideration " (Williston, *supra*, § 112). Such must be the meaning of this transaction unless we are prepared to hold that the college may keep the payment on account, and thereafter nullify the scholarship which is to preserve the memory of the subscriber. The fair implication to be gathered from the whole transaction is assent to the condition and the assumption of a duty to go forward with performance (*DeWolf Co.* v. *Harvey*, 161 Wis. 535; *Pullman Co.* v. *Meyer*, 195 Ala. 397, 401; *Braniff* v. *Baier*,

101 Kan. 117; cf. Corbin, Offer & Acceptance, 26 Yale L. J. 169, 177, 193; McGovney, Irrevocable Offers, 27 Harv. L. R. 644; Sir Frederick Pollock, 28 L. Q. R. 100, 101). The subscriber does not say: I hand you $1,000, and you may make up your mind later, after my death, whether you will undertake to commemorate my name. What she says in effect is this: I hand you $1,000, and if you are unwilling to commemorate me, the time to speak is now.

The conclusion thus reached makes it needless to consider whether, aside from the feature of a memorial, a promissory estoppel may result from the assumption of a duty to apply the fund, so far as already paid, to special purposes not mandatory under the provisions of the college charter (the support and education of students preparing for the ministry), an assumption induced by the belief that other payments sufficient in amount to make the scholarship effective would be added to the fund thereafter upon the death of the subscriber (*Ladies Collegiate Inst.* v. *French*, 16 Gray, 196; *Barnes* v. *Perine*, 12 N. Y. 18, and cases there cited).

The judgment of the Appellate Division and that of the Trial Term should be reversed, and judgment ordered for the plaintiff as prayed for in the complaint, with costs in all courts.

KELLOGG, J. (dissenting). The Chief Judge finds in the expression " In loving memory this gift shall be known as the Mary Yates Johnston Memorial Fund " an offer on the part of Mary Yates Johnston to contract with Allegheny College. The expression makes no such appeal to me. Allegheny College was not requested to perform any act through which the sum offered might bear the title by which the offeror states that it shall be known. The sum offered was termed a " gift " by the offeror. Consequently, I can see no reason why we should strain ourselves to make it, not a gift, but a trade.

Moreover, since the donor specified that the gift was made " In consideration of my interest in Christian education, and in consideration of others subscribing," considerations not adequate in law, I can see no excuse for asserting that it was otherwise made in consideration of an act or promise on the part of the donee, constituting a sufficient *quid quo pro* to convert the gift into a contract obligation.   To me the words used merely expressed an expectation or wish on the part of the donor and failed to exact the return of an adequate consideration.   But if an offer indeed was present, then clearly it was an offer to enter into a unilateral contract.   The offeror was to be bound provided the offeree performed such acts as might be necessary to make the gift offered become known under the proposed name.   This is evidently the thought of the Chief Judge, for he says: " She imposed a condition that the ' gift ' should be known as the Mary Yates Johnston Memorial Fund."   In other words, she proposed to exchange her offer of a donation in return for acts to be performed.   Even so  there was never any acceptance of the offer and, therefore, no contract, for the acts requested have never been performed.   The gift has never been made known as demanded.   Indeed, the requested acts, under the very terms of the assumed offer, could never have been performed at a time to convert the offer into a promise.   This is so for the reason that the donation was not to take effect until after the death of the donor, and by her death her offer was withdrawn.   (Williston on Contracts, sec. 62.) Clearly, although a promise of the college to make the gift known, as requested, may be implied, that promise was not the acceptance of an offer which gave rise to a contract.   The donor stipulated for acts, not promises. " In order to make a bargain it is necessary that the acceptor shall give in return for the offer or the promise exactly the consideration which the offeror requests.   If an act is requested, that very act and no other must be

given. If a promise is requested, that promise must be made absolutely and unqualifiedly." (Williston on Contracts, sec. 73.) " It does not follow that an offer becomes a promise because it is accepted; it may be, and frequently is, conditional, and then it does not become a promise until the conditions are satisfied; and in case of offers for a consideration, the performance of the consideration is always deemed a condition." (Langdell, Summary of the Law of Contracts, sec. 4.) It seems clear to me that there was here no offer, no acceptance of an offer, and no contract. Neither do I agree with the Chief Judge that this court " found consideration present where the general law of contract, at least as then declared, would have said that it was absent " in the cases of *Barnes* v. *Perine* (12 N. Y. 18), *Presbyterian Society* v. *Beach* (74 N. Y. 72) and *Keuka College* v. *Ray* (167 N. Y. 96). In the *Keuka College* case an offer to contract, in consideration of the performance of certain acts by the offeree, was converted into a promise by the actual performance of those acts. This form of contract has been known to the law from time immemorial (Langdell, sec. 46) and for at least a century longer than the other type, a bilateral contract. (Williston, sec. 13.) It may be that the basis of the decisions in *Barnes* v. *Perine* and *Presbyterian Socie y* v. *Beach* (*supra*) was the same as in the *Keuka College* case. (See *Presbyterian Church of Albany* v. *Cooper*, 112 N. Y. 517.) However, even if the basis of the decisions be a so-called " promisory estoppel," nevertheless they initiated no new doctrine. A so-called " promisory estoppel," although not so termed, was held sufficient by Lord MANSFIELD and his fellow judges as far back as the year 1765. (*Pillans* v. *Van Mierop*, 3 Burr. 1663.) Such a doctrine may be an anomaly; it is not a novelty. Therefore, I can see no ground for the suggestion that the ancient rule which makes consideration necessary to the formation of every contract is in danger of effacement through any decisions

of this court. To me that is a cause for gratulation rather than regret. However, the discussion may be beside the mark, for I do not understand that the holding about to be made in this case is other than a holding that consideration was given to convert the offer into a promise. With that result I cannot agree and, accordingly, must dissent.

POUND, CRANE, LEHMAN and O'BRIEN, JJ., concur with CARDOZO, Ch. J.; KELLOGG, J. dissents in opinion, in which ANDREWS, J., concurs.

Judgment accordingly.