In the Matter of the Claim of the FIRST METHODIST EPISCOPAL CHURCH OF MOUNT VERNON against the Estate of GEORGE HOWARD, Deceased.

Surrogate's Court, Westchester County, March 21, 1929.

*Gescheidt & Gillette* [*Ralph Gillette* and *Charles P. Kearney* of counsel], for the trustees.

*Strang & Taylor* [*Clinton T. Taylor* of counsel], for the claimant.

SLATER, S.  George Howard, the decedent, died May 28, 1921, aged about eighty-three years, leaving a last will and testament admitted to probate July 11, 1921, in the Surrogate's Court of

Westchester county. The decree upon final accounting is dated the 11th day of January, 1926.

It appears that a claim for $5,000 was presented by the treasurer of the First Methodist Episcopal Church in the city of Mount Vernon on January 16, 1922, because of a charitable subscription made by George Howard to the war memorial building fund of said church. The claim was rejected in writing on January 24, 1922. The account of proceedings did not refer to the rejected claim, nor was the claimant cited to appear as required by law. (Surrogate's Court Act, § 211.) A long time elapsed before the church corporation learned of the entry of the decree upon the final accounting. For the first time in my experience the unpaid claimant was not cited on the accounting proceeding. Counsel suggests the intervention of the Statute of Limitations as a defense to protect the executors, in the event the claim is otherwise found valid. This contention is untenable. (*Matter of Messing*, 95 Misc. 1; 2 Heaton Surr. [4th ed.] 1263.)

On November 14, 1928, the church by petition set forth the facts and sought the intervention of the court, praying for an order permitting the petitioner to have its claim tried and determined, and for such other and further relief as may seem just and proper. A citation was issued to the trustee and to all persons interested in the estate as distributees, requiring them to show cause why the decree upon the accounting should not be opened and the petitioner allowed to present its claim for trial and determination. An order was entered opening the decree. The claim has been heard and the court will now decide the issue presented.

The First Methodist Episcopal Church of Mount Vernon in Westchester county is a religious corporation, a unit of the New York East Conference of the Methodist Episcopal Church. George Howard, the testator, was for many years a resident and store-keeper in Mount Vernon. He was a communicant of said church. He prospered in the city and died well-to-do in worldly goods. In the early part of 1919 it was determined by the official board, the societies of the church, and the church members to erect a war memorial building or parish house, to be used for religious purposes in connection with the church, in memory of the 400 members of the church who took part in the World War — a charitable and a patriotic endeavor. Public subscriptions were sought for the purpose of purchasing land and the erection of the building. The work of raising funds and completing the edifice ranged over a few years. At the outset of the task of securing subscriptions the testator was interested because in 1919 he made an initial contribution of $500 to the war memorial fund. In

fact, he was the first subscriber. This amount he paid. On February 21, 1920, he again subscribed his name to a subscription card as follows:

"WAR MEMORIAL BUILDING

 of the

FIRST METHODIST EPISCOPAL CHURCH
Mount Vernon, N. Y.

"Feb. 21, 1920.

" I promise to pay the sum of Five thousand ...............
dollars for the WAR MEMORIAL BUILDING of First M. E. Church, Mt. Vernon, payable in ~~five equal annual installments,~~ three years.

" Name     ·George Howard
" Address     143 Prospect Aveu

" As ane Merol for my wife Joanna."

On the reverse side of the card is the name " Joanna Howard." The date, the signature, the street address, the words of memorial for his wife, and his wife's name on the back of the subscription card are in the testator's handwriting.

The subscription was not payable by its terms until three years from date, or on February 21, 1923. The written subscription was made at a time when the testator had called at the parsonage upon the pastor, the Rev. Doctor Otho F. Bartholow, and had luncheon with him and Mrs. Bartholow, as recorded by their testimony. The card was filed with the treasurer of the committee and entered upon his books of account.

The committees and officers commenced to function for the purpose of securing subscriptions to the fund in 1919. The land was purchased in June, 1919, and paid for in cash from money provided partly by subscription and partly by temporary loans. Small expenditures were made by the committee from time to time, viz., November 15, 1919, payment was made for search of title; a bill was paid for the erection of a sign on the lot indicating publicly the use of the land for the war memorial building; a sketch or chart was paid for in March, 1920. A report of progress was made by the committee May 7, 1920. It is asserted by counsel for the estate that the payments made up to February 21, 1920, were for expenditures created before the testator pledged the $5,000, and they do not enter into the situation as a contributing factor to the creation of a contract between the testator and the church.

On Sunday, March 3, 1920, after the date of the subscription by the testator, publicly at church service an effort was made to

secure subscriptions, and the sketch, or chart, of a house was shown, and each subscription marked a brick on the chart. Many subscriptions were received on this day. In October, 1920, a small amount of interest on loans was paid by the committee. In the meantime many other persons had subscribed as indicated by the large number of war memorial fund pledge cards in evidence. On December 20, 1920, the committee made a further report of progress indicating receipts and disbursements, and the work attendant upon securing funds proceeded. In the latter part of April, or the early part of May, 1921, at least before the death of the testator on May 18, 1921, an architect was consulted and directed to proceed with preliminary sketches for the building. The preparation of plans by the architect went on during the summer and fall of 1921. The completed plans were accepted by the board of trustees of the church and on December 28, 1922, $1,000 was paid from the collected pledges to the architect on account of his services. It appears that expenditures were made by the trustees of the fund prior to the expiration of the time when the testator's gift was to be paid, namely, February 20, 1923. These payments were made both before and after the testator died. The building was completed and ready for use in 1924 and it was dedicated to its public purposes as a war memorial.

Is the testator's charitable subscription an enforcible debt against his estate? Was there a consideration for the promise? Did the testator's death revoke his subscription? Counsel on both sides point to *Allegheny College* v. *National Chautauqua County Bank* (246 N. Y. 369) as a decision in their favor.

The courts sustain subscriptions for some public object if any consideration can be found. The consideration need not be one beneficial to the subscriber. The feeling that a deliberate promise ought to be enforced has led the courts to declare for fair dealing, honesty and equity. This is expressive of modern disposition toward charitable subscriptions, so well evidenced in *Allegheny College* v. *National Chautauqua County Bank* (*supra*). What applies to a single donor applies with double force to multiple donors to charitable funds.

The *Allegheny College* case indicates the growth of the judicial process wherein the law is made to conform to the justice of the case, and wherein the law enforces the reasonable expectations arising out of conduct. And again, the *Allegheny College* case has modernized the law of charitable subscriptions by viewing the facts, as Chief Judge CARDOZO says, " as if they were the product of our own day and thought."

It is the court's opinion that proven facts in the instant case

bring it within the decision of the *Allegheny College* case in that the promisor created a memorial to perpetuate the name of his wife. The offer and acceptance of the memorial pledge create the agreement binding the donor and the donee. The assumption of the duty to maintain the war building — payment by the donor on the one hand, and the maintenance of the memorial on the other hand (which should contain a tablet indicating the memorial gift) completed the donation. (*N. J., etc., Dispensary* v. *Wright*, 95 N. J. L. 462, 464.) The committee on behalf of the church assumed a duty which is sufficient to give validity to the charitable subscription.

Chief Judge CARDOZO in his opinion in the *Allegheny College* case (p. 377) expresses succinctly the reason for the donor's act: " The longing for posthumous remembrance is an emotion not so weak as to justify us in saying that its gratification is a negligible good." It is to the credit of our civilization that such desires exist in the hearts of mankind.

The gift was accepted and it becomes the duty of the donee to carry out its part of the contract. So must the donor carry into fulfillment his promise.

Aside from the feature of a memorial, in my opinion the facts bring the case within the view of the law creating a " promissory estoppel " resulting from the assumption of a duty to apply the funds raised through other charitable subscriptions. There is ample evidence that there was an implied request by the testator for the church to proceed with its efforts to raise the funds and expend time and money to accomplish the purpose. It has been shown that the offer evidenced by the subscription was accepted and it becomes a valid and operative agreement between the parties. Testator's death occurring before the due date of the promise did not revoke the gift. (*Converse's Estate*, 240 Penn. St. 458.) When consideration passed either by way of memorial or by promissory estoppel, the die was cast and revocation could not take place. (*Barnes* v. *Perine*, 12 N. Y. 18; *Presbyterian Church of Albany* v. *Cooper*, 112 id. 517; *Keuka College* v. *Ray*, 167 id. 96; *Cohen & Sons* v. *Lurie Woolen Co.*, 232 id. 112, 114; *Locke* v. *Taylor*, 161 App. Div. 44; *Russian Symphony Society, Inc.*, v. *Holstein*, 199 id. 353; *Matter of Conger*, 113 Misc. 129; *Matter of Reed*, 133 id. 903.)

*Trustees of Hamilton College* v. *Stewart* (1 N. Y. 581) and kindred cases do not apply. The facts are entirely different. The doctrine of those cases falls within a very limited classification. *Keuka College* v. *Ray* (*supra*) distinguishes the types of cases.

The claim is allowed. Submit decision and enter decree upon notice to appearing attorneys.