In the Matter of the Estate of SYLVESTER TUMMONDS, Deceased.

Surrogate's Court, Wayne County, July 20, 1936.

*Brasser & Brasser*, for the executors.

*Charles P. Williams*, for a creditor.

*George Britten*, for the Cazenovia Seminary, creditor.

GILBERT, S.   In this proceeding for the judicial settlement of the accounts of the executors of the above-entitled estate, which is insolvent, it becomes necessary to determine the validity of the claim of Cazenovia Seminary, founded on a written instrument executed by the decedent under the following circumstances:

On or about the 22d day of June, 1917, and during the course of a drive then being conducted in behalf of Cazenovia Seminary for the purpose of raising an endowment fund, the decedent executed an instrument in writing, of which the following is a copy:

" $1000.00          Dated at WILLIAMSON, N. Y., *June* 22, 1917

" CAZENOVIA SEMINARY ENDOWMENT

" For the purpose of providing an endowment for the Cazenovia Seminary, for value received and in consideration of the sub-

scriptions of others for the same purpose, I hereby direct my executors to pay to the Trustees of Cazenovia Seminary, a New York Corporation located at Cazenovia, N. Y., the sum of One Thousand Dollars ($1000.00) which shall become due one day after my death and the death of my wife Hannah M. Tummonds and payable out of my estate.

" This note shall bear interest at the rate of                per annum from

" Witnesses $\left\{ \begin{array}{l} \text{W. E. BLACKSTOCK} \\ \text{WILBER G. BOYEL} \end{array} \right.$

          " Name    SYLVESTER TUMMONDS

          "Address            Williamson, N. Y."

### INDORSEMENT ON BACK

" This One Thousand Dollars provides for the Sylvester and Hannah M. Tummonds scholarship and it shall so appear on the records of Cazenovia Seminary and in its annual catalog.

" Further, Mrs. J. P. Anderson shall have the privilege of naming who may have the benefit of this scholarship.

" This may be paid up by Sylvester Tummonds at any time he may wish.

                              " W. E. BLACKSTOCK "

Sylvester Tummonds died on January 27, 1929, having survived his wife, Hannah M. Tummonds, mentioned in the above instrument. During the course of administration of his estate a claim was filed by Cazenovia Seminary, based on the above instrument. No action was taken by the executors, and it has been stipulated by the interested parties to try out the claim as a rejected claim.

On the hearing held in this matter two representatives of the claimant were sworn. From their testimony it appears that the instrument in question was one of a number procured in the above-mentioned drive; that since the instrument was given nothing had been paid thereon nor had the claimant done anything in respect to it; that it was not the practice of the seminary to carry out the directions contained in this or similar instruments until the money was actually received; that the scholarship mentioned in the instrument had not been set up and that Mrs. J. P. Anderson, named in the instrument, had never designated a beneficiary of the scholarship. These witnesses also testified that, as a result of the apparent success of the drive, the seminary was kept open; and a bonded indebtedness of several thousands of dollars was incurred to erect a new building.

A decision of the question involved must rest on the presence or absence of a legal consideration supporting the instrument, for it cannot be questioned that a voluntary promise, without consideration, to make a future gift cannot be enforced against a decedent's estate. (*Harris* v. *Clark*, 3 N. Y. 93; *Dougherty* v. *Salt*, 227 N. Y. 200.)

In view of the wording of the instrument itself, it would appear that some of the testimony given on the hearing held in this proceeding was irrelevant.

While the printed matter on the face of the note speaks of a purpose to provide an " Endowment," yet the written indorsement directs the money be used to provide a " Scholarship," with certain conditions attached. There is certainly a vast difference between a general endowment and a special scholarship and it is difficult to see how the promise of a gift of a fund to be used for a special purpose could possibly justify the seminary in erecting a building with the expectation of using the proceeds of decedent's gift to pay therefor or apply thereon.

The facts in *Wilson* v. *Baptist Education Society of New York* (10 Barb. 308) seem more nearly to parallel the facts in the question before me than in any other case examined. In that case the rule in regard to sufficiency of consideration is stated and applied and consideration found to be lacking. In fact, in all of the cases from *Stewart* v. *Trustees of Hamilton College* (2 Den. 403) down to the decision in *Allegheny College* v. *National Chautauqua County Bank* (246 N. Y. 369), and including *Keuka College* v. *Ray* (167 id. 96), the presence or absence of consideration has been decisive in the determination of these charitable bequests, the distinctions drawn, if any, going to the question of what will constitute a valid consideration.

In 1927 the Court of Appeals wrote its decision in *Allegheny College* v. *National Chautauqua County Bank* (*supra*). In this decision Chief Judge CARDOZO makes mention of the doctrine of " promissory estoppel " as a recent adjunct to the law of consideration and as a possible substitute for or an exception to its ordinary requirements, and says: " Certain, at least it is that we have adopted the doctrine of promissory estoppel as the equivalent of consideration in connection with our law of charitable subscriptions."

It is, perhaps, somewhat difficult from a casual reading of the *Allegheny College* case to understand just what is meant by a promissory estoppel. The Restatement of the Law of Contracts under this index heading refers to volume I, section 90. The title of section 90 reads: " Promise reasonably inducing definite and sub-

stantial action," and the section states, "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

While reading only from excerpts from Judge CARDOZO's opinion might indicate otherwise, when the whole opinion is considered it seems apparent that the decisive factor in the *Allegheny* case was the payment of $1,000 on account, made by the testator in her lifetime, and the acceptance of which by the college imposed a duty not only on the college to use the fund for the purpose designated by the testator but also imposed a duty on her estate to complete the payment and thus consummated a bilateral agreement. As stated in the opinion, " The purpose of the founder would be unfairly thwarted or at least inadequately served if the college failed to communicate to the world, or in any event to applicants for the scholarship, the title of the memorial. By implication it undertook, when it accepted a portion of the 'gift,' that in its circulars of information and in other customary ways, when making announcement of this scholarship, it would couple with the announcement the name of the donor."

That there must be something beyond merely a promise to pay in instruments of this character is further brought out by the decision of the Court of Appeals in *Matter of Taylor* (251 N. Y. 257), decided about two years later than *Allegheny College* v. *National Chautauqua County Bank* (*supra*). In the decision in *Matter of Taylor*, written by Judge POUND and concurred in by Chief Judge CARDOZO, it is said, " The question remains whether the church, after the note was given, altered its position to the knowledge of the promisor and in the reasonable belief that the promise would be kept." (Citing the *Allegheny* case.)

In the very recent case of *Matter of Barker* (158 Misc. 803), arising in the Surrogate's Court of St. Lawrence county, two notes of similar character given to educational institutions were held not enforcible. In that case, however, the question of promissory estoppel was not raised or discussed in the opinion.

In the testimony taken in the matter now before me, I cannot find anything more than a promise to make a future gift upon which nothing further was done by the promisor and as the result of which, nothing whatever was done by the promisee with the knowledge of the promisor which in any way altered their respective positions after the instrument in question was executed and delivered.

A provision may be inserted in the judicial settlement decree denying the claim.