S. Samuel Di Falco, S.
Pursuant to the provisions of section 211-b of the Surrogate’s Court Act, the executor has instituted a proceeding to determine the legal enforcibility of an oral charitable pledge made by the decedent to the United Jewish Appeal of Greater New York, Inc.
The facts are not in dispute. On or about June 30, 1959, the decedent during a fund-raising campaign conducted by the respondent charity made an oral pledge to contribute $500 to it. On or about November 29, 1959, he paid $250 on account of this pledge. On or about September 14, 1960, the decedent requested that the unpaid balance of his 1959 pledge be considered as his pledge towards the 1960 United Jewish Appeal campaign and on June 6, 1961, he further pledged the sum of $250 to the respondent charity. By a letter dated June 28, 1961, signed by its treasurer, the United Jewish Appeal of Greater New York acknowledged receipt of the pledge and expressed its gratitude to the decedent for his support of its charitable aims. The decedent died on May 27, 1963, without making any further payments on account of his pledges, leaving a balance of $500 unpaid with respect thereto. The Statute of Frauds has not been pleaded as a defense and the only issue presented for determination is whether the oral pledges *321 concededly made by the decedent arc binding upon his estate or must fail for want of consideration.
The United Jewish Appeal of Greater New York is a New York membership corporation organized and operated exclusively for charitable purposes. Its objective generally is to raise funds for the relief, rehabilitation and resettlement of Jews in need or in danger in various parts of the world. The funds raised by the respondent are distributed to various charitable organizations engaged in relief, rehabilitation and settlement work and by agreement these beneficiary agencies designate the respondent as their sole fund-raising agency and refrain from engaging in any fund-raising activities.
It is alleged and undisputed that the respondent charity could not function or carry out its charitable works without reliance upon the pledges and the contributions received as the result of such pledges. During the years 1959, 1960 and 1961 the United Jewish Appeal of Greater New York, in order to carry out its charitable functions, borrowed the aggregate sum of $60,000,000 from seven different banks in anticipation of and in advance of collection of the contributions pledged to it. Its contract with the banks required it to furnish on the fifteenth day of each month a certificate setting forth the aggregate amount of pledges outstanding as of the end of the preceding month which it had received from its fund-raising campaigns during the two years next preceding. There can be little doubt that great reliance is placed upon the subscription pledges by both the banks and the United Jewish Appeal in preparing its budgets and estimating the funds that will be available to it and the beneficiary agencies during the year ahead.
A review of the authorities would indicate that the trend of judicial decision during the last century has been towards the enforcement of charitable pledges almost as a matter of public policy (Matter of Kirby, 39 Misc 2d 190; Liberty Maimonides Hosp. v. Feldberg, 4 Misc 2d 291; Matter of Lord, 175 Misc. 921; Matter of First Methodist Episcopal Church of Mt. Vernon v. Estate of George Howard, 133 Misc. 723, affd. 233 App. Div. 753; Allegheny Coll. v. National Chautauqua County Bank, 246 N. Y. 369; Barnes v. Perine, 12 N. Y. 18). In discussing the trend and the gradual expansion of the strictures of the “ moulds of consideration ” as applied to charitable subscriptions, Judge Cabdozo stated: “ Very likely, conceptions of public policy have shaped, more or less subconsciously, the rulings thus made. Judges have been affected by the thought that ‘ defences of that character ’ are ‘ breaches of faith toward the public, and especially toward those engaged in the same *322 enterprise, and an unwarrantable disappointment of the reasonable expectations of those interested ’ ”, (Allegheny Coll. v. National Chautauqua County Bank, supra, p. 374.)
In an effort to free charitable pledges or subscriptions from the traditional requirement that an enforcible promise must be supported by consideration, our courts have resorted to various theories. In some instances the decisions are predicated upon the existence and consummation of either a bilateral or unilateral contract (Keuka Coll. v. Ray, 167 N. Y. 96; Barnes v. Perine, supra; I. & I. Holding Corp. v. Gainsburg, 276 N. Y. 427; Allegheny Coll. v. National Chautauqua County Bank, supra; Liberty Maimonides Hosp. v. Felberg, supra; Matter of de Brabant, 197 Misc. 923; Matter of Lord, supra), and in others the subscriptions have been upheld by application of the equitable principle of estoppel often referred to as promissory estoppel (I. & I. Holding Corp. v. Gainsburg, supra; Presbyterian Soc. v. Beach, 74 N. Y. 72; Allegheny Coll. v. National Chautauqu,a County Bank, supra; Matter of de Brabant, supra). As the Court of Appeals so clearly stated in Metropolitan Life Ins. Co. v. Childs Co. (230 N. Y. 285, 292-293): “ An estoppel rests upon the word or deed of one party upon which- another rightfully relies and so relying changes his position to his injury. When this occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances
In many of the cited cases it is difficult to ascertain the precise theory relied upon to sustain the charitable subscriptions or pledges but the end result has invariably been the same. Sound public policy would appear to dictate these results and this court is in agreement with the efforts made to sustain charitable pledges by our courts. The philanthropic work carried on by organized charities, made possible through voluntary subscriptions, is a distinguishing and distinguished feature of our free society. It is a demonstration of the human sympathy, mercy, consideration and good will borne by those more fortunately endowed towards their less fortunate fellowmen. The agreed facts submitted in the case at bar establish that the respondent charity entered into contracts and incurred liability in reliance upon the pledge made by this decedent and others.
Under the authorities hereinabove cited the court finds, therefore, that the charitable pledges made by the decedent are binding upon his estate.