OPINION OF THE COURT
Scott Fairgrieve, J.
Issue
This case explores the liability of a member of a temple or *374 church for dues imposed upon each member. There exists a paucity of law on this subject.
Background
Both plaintiff and defendants have moved for summary judgment. Plaintiff Temple Beth AM has commenced this action against a former member of its congregation to recover for dues owed in the amount of $1,270. The plaintiff characterizes the sum owed in paragraphs 4 and 5 of the complaint:
“fourth: That the defendant(s) did request certain work, labor, services, & materials from the plaintiff for the period ending 07/01/01 leaving a balance due and owing in the sum of $ 1270.00, said sum was . .. agreed upon by the parties.
“fifth: That the plaintiff did comply with the requests of the defendant(s) in that they did fully provide and perform the services which were specifically requested by the defendant(s) and said services were accepted by the defendant(s) without complaint and that the defendant(s) agreed to pay to the plaintiff the balance then due and owing.”
Defendants have interposed their answer denying the allegations.
Plaintiff has submitted the affidavit of Gary Schwartz (finance chairman of plaintiff) that $1,270 is owed for membership dues for the year commencing July 1, 2001. Plaintiff attached the invoice dated July 1, 2001 addressed to the account of defendants in the amount of $1,470 with the description that the invoice is for dues — full member. The invoice provides for a payment schedule of one third due July 1, one third due October 1, and balance by January 1. Plaintiff acknowledges that defendants paid $250.
Defendants submit the affidavit of Ted Tanenbaum, who states that he verbally resigned in August of 2001 when he spoke to the rabbi’s secretary: “My wife and I did resign from the Temple in the beginning of August 2001, and confirmed this resignation by telephone conversation with the Rabbi’s secretary.”
Thereafter, defendants sent a letter dated August 30, 2002 to plaintiff confirming that they resigned from the Temple in 2001 and stating not to send any further bills for dues. In reply, plaintiff sent the correspondence of Gary Schwartz, dated September 10, 2002, requesting payment of the 2001 dues of *375 $1,270. Mr. Schwartz states that the balance of dues are owed because: “As a Temple, we budgeted our expenses based upon your membership. While you benefited from our services when you were a member, your resignation did not reheve you of your financial obligation. We are in need of the balance of your membership dues.”
In a further affidavit, Gary Schwartz states that a search of the plaintiffs records reveals no written correspondence from defendants resigning prior to July 1, 2001, and therefore plaintiff owes the dues. Ted Tanenbaum also submits a reply affidavit again confirming their resignation in August of 2001, by speaking to the rabbi’s secretary. Mr. Tanenbaum also states that there is no requirement that the resignation be done in writing.
Discussion
There exists a paucity of law on the issue of a member of a church or congregation’s liability for dues. This court agrees with the following statement in 66 Am Jur 2d, Religious Societies § 19:
“The relations, rights, and obligations arising from membership in a religious society are to be determined according to the constitution, rules, or bylaws of the society, as well as by reference to the statutory provisions governing such religious bodies, because one who becomes a member of a church is presumed to have voluntarily submitted to all the known tenets of congregational discipline, with an implied consent to its government, and is bound by its laws, usages, customs, and principles. Membership in a church is not a property right.”
In Matter of Lipsky (45 Misc 2d 320, 321-322 [Sur Ct, NY County 1965]), the court explored the legal development of holding parties liable for oral pledges made to charities even though not supported by consideration:
“A review of the authorities would indicate that the trend of judicial decision during the last century has been towards the enforcement of charitable pledges almost as a matter of public policy (Matter of Kirby, 39 Misc 2d 190; Liberty Maimonides Hosp. v. Feldberg, 4 Misc 2d 291; Matter of Lord, 175 Misc. 921; Matter of First Methodist Episcopal Church of Mt. Vernon v. Estate of George Howard, 133 Misc. 723, affd. 233 App. Div. 753; Allegheny Coll. v. National *376 Chautauqua County Bank, 246 N. Y. 369; Barnes v. Perine, 12 N. Y 18). In discussing the trend and the gradual expansion of the strictures of the ‘moulds of consideration’ as applied to charitable subscriptions, Judge Cardozo stated: ‘Very likely, conceptions of public policy have shaped, more or less subconsciously, the rulings thus made. Judges have been affected by the thought that “defences of that character” are “breaches of faith toward the public, and especially toward those engaged in the same enterprise, and an unwarrantable disappointment of the reasonable expectations of those interested” ’. (Allegheny Coll. v. National Chautauqua County Bank, supra, p. 374.)
“In an effort to free charitable pledges or subscriptions from the traditional requirement that an en-forcible promise must be supported by consideration, our courts have resorted to various theories. In some instances the decisions are predicated upon the existence and consummation of either a bilateral or unilateral contract (Keuka Coll. v. Ray, 167 N. Y. 96; Barnes v. Perine, supra; I. & I. Holding Corp. v. Gainsburg, 276 N. Y. 427; Allegheny Coll. v. National Chautauqua County Bank, supra; Liberty Maimonides Hosp. v. Felberg, supra; Matter of de Brabant, 197 Misc. 923; Matter of Lord, supra), and in others the subscriptions have been upheld by application of the equitable principle of estoppel often referred to as promissory estoppel (I. & I. Holding Corp. v. Gainsburg, supra; Presbyterian Soc. v. Beach, 74 N. Y. 72; Allegheny Coll. v. National Chautauqua County Bank, supra; Matter of de Brabant, supra). As the Court of Appeals so clearly stated in Metropolitan Life Ins. Co. v. Childs Co. (230 N. Y. 285, 292-293): ‘An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. When this occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances’.
“In many of the cited cases it is difficult to ascertain the precise theory relied upon to sustain the charitable subscriptions or pledges but the end result has invariably been the same. Sound public policy would appear to dictate these results and this court is in agreement with the efforts made to sustain charit *377 able pledges by our courts. The philanthropic work carried on by organized charities, made possible through voluntary subscriptions, is a distinguishing and distinguished feature of our free society. It is a demonstration of the human sympathy, mercy, consideration and good will borne by those more fortunately endowed towards their less fortunate fellowmen. The agreed facts submitted in the case at bar establish that the respondent charity entered into contracts and incurred liability in reliance upon the pledge made by this decedent and others.”
This court agrees with plaintiffs position that defendants are liable for the full amount of the dues billed on July 1, 2001. This position is supported by law and the financial situation presented in the letter of Mr. Schwartz, dated September 10, 2002, that the Temple budgets its expenses based upon the membership of the organization. Thus, the defendants became legally bound to pay the full dues when billed on July 1, 2001. The defendants, as members of the congregation, have voluntarily submitted to the plaintiffs rules and dues requirements. (See 66 Am Jur 2d, Religious Societies § 19, supra.) Since plaintiff relies upon the defendants’ membership as of the time of budgeting, and the dues being billed, defendants are estopped from refusing to pay plaintiff congregation. (See, Matter of Lipsky, supra.) The court also agrees with plaintiff that services have been provided to defendants for the operation of the Temple, for which defendants are liable to pay dues to support its operations.
The court does recognize that defendant Mr. Tanenbaum claims to have spoken to the rabbi’s secretary, who accepted defendants’ resignation and was told that he didn’t have to pay any more dues. This creates a question of fact which mandates a trial.
Based upon the above, the court denies the motions for summary judgment.