WOODMERE ACADEMY, Appellant, v SAUL P. STEINBERG, Respondent.

First Department, July 13, 1976

*Samuel Gottlieb* of counsel *(Milton Shalleck* with him on the brief; *Gainsburg, Gottlieb, Levitan & Cole,* attorneys), for appellant.

*David L. Foster* of counsel *(Frederick L. McKnight* and

*Steven A. Asher* with him on the brief; *Willkie Farr & Gallagher,* attorneys), for respondent.

CAPOZZOLI, J. Plaintiff, Woodmere Academy, is a nonprofit educational institution. In 1969 it engaged in a fund raising campaign and pledges and contributions were solicited.

In August, 1969 defendant executed his formal printed pledge in the sum of $375,000. Subsequent to the execution of the pledge defendant paid to plaintiff $50,000 in January, 1971 on account of same. By the terms of the pledge the defendant undertook to pay the balance of $325,000 in 1972.

On December 7, 1973 the defendant wrote to plaintiff's president the following letter:

"I regret to inform you that I will not be able to pay the remaining amount of my pledge to Woodmere Academy during 1973.

"Due to the unforeseen and unfortunate circumstances in the Middle East, I have found that Israel is in such severe and dire straits that it must take precedent in my mind and heart over any other commitments no matter how worthwhile. I therefore committed and paid a very large contribution to Israel, which was a very severe drain on my financial resources at this time and one that I had not planned on.

"I will pay the remainder of my pledge to Woodmere Academy in 1974, with half of it being paid in the first six months and half in the second six months.

"I know how important Woodmere Academy is as an institution, and I don't want to suggest any diminishing of our interest or regard for it. If I am financially able, I will attempt to make a payment in the first three months of 1974.

"I hope that you and the Board will understand this unusual situation.

"Best regards,

Sincerely,
(Sgd.)

"Mr. Bert Rubin
152 Woodmere Boulevard South
Woodmere, New York 11598"

This letter followed an earlier letter of December 12, 1972, which was in the nature of an agreement signed by the defendant after consulting with counsel and which is here quoted in full.

"Mr. Saul P. Steinberg
1220 Lefferts Road
Hewlett Bay Park, New York

"Dear Mr. Steinberg:

"This will confirm the agreement reached between us concerning payment of your pledge of $375,000. to The New Era Fund of Woodmere Academy. We received $50,000. in January 1971, and the balance of $325,000. was originally to have been paid $50,000. by the end of 1971, and $275,000. by the end of 1972.

"We agree to extend the time for payment of the present balance of $325,000. from the original due dates, provided that we receive payment in cash, check or immediately marketable securities as follows—$125,000. simultaneously with the exchange of this letter between us, and $200,000. by December 31, 1973.

"In recognition of your concern and interest in Woodmere Academy, our library, as you know, has been named 'The Barbara Steinberg Learning Center.' You have our unconditional and unqualified assurance that the building will continue to be so designated as long as it is a part of the school, and will be so referred to in any communication, writing or message over which we have control, inasmuch as we view our obligation in this respect in the nature of a trust.

"We would appreciate your indicating your confirmation of the foregoing by signing and returning the enclosed copy of this letter together with your payment of $125,000.

Sincerely yours,
THE WOODMERE ACADEMY

"I confirm and agree     By Order of the
to the foregoing.     Board of Trustees
/s/SAUL P. STEINBERG     By: /s/STANLEY B. RICH,
     Saul P. Steinberg       Stanley B. Rich,
                         President"

The parties agreed that the payment of $125,000 was actually made by the defendant, as provided in the last-quoted letter.

At no time during the period following the execution of the pledge by defendant, and up to the time this action was commenced, was there any claim by the defendant concerning the alleged fraud of the plaintiff in connection with so-called representations, assurances and performances of conditions.

The first time that the defendant made such a claim was when his answer, to the suit commenced by the plaintiff, was served. To say the least, as was observed by Special Term, despite its denial of plaintiff's motion, defendant's claim is seriously suspect.

It is important to note that the failure of the defendant to honor his pledge occurred after he and his family had moved to New York and his children were no longer in plaintiff's school. It is also important to note that, when the original motion for summary judgment was made by the plaintiff, the defendant did not file his own affidavit in opposition. He relied on the affidavit of one of his lawyers, who, without indicating any personal knowledge of the transactions between the plaintiff and the defendant, set forth certain allegations of fraud, misrepresentations and failure of consideration on the part of the plaintiff, all based purely on hearsay. The motion was denied at Special Term.

Thereafter the plaintiff moved to renew and reargue its motion for summary judgment and, for the first time, an affidavit executed by defendant was offered to the court in opposition to this renewal motion. An examination of same discloses that it is replete with conclusory allegations and provides no factual averments or evidentiary facts, as is required to defeat a motion for summary judgment. It speaks of conditions, promises and representations, not one of which is spelled out, nor is the person identified with whom the discussions took place. It uses terms such as "it was agreed", "important condition and promise to me". To whom did he speak, when, where, what was said? These are the questions which should have been answered by the defendant in the affidavit in opposition. By way of contrast, the affidavits offered by the plaintiff clearly support its motion by factual averments, documents and statements of the defendant himself.

We are satisfied from this record that the pledge executed by this defendant and the letter of December 12, 1972 constitute a binding agreement and, in fact, this last letter, even by itself, under the circumstances, did constitute a binding agreement separate from the pledge. At least, it certainly constituted a confirmation of the original pledge. *(Breger v Hampshire Country Club,* 30 AD2d 526, affd 23 NY2d 958.)

The policy of our State, with regard to the enforcement of charitable pledges, is best expressed in *I. & I. Holding Corp. v*

*Gainsburg* (276 NY 427, 433): "Our courts have definitely ruled that such subscriptions are enforceable on the ground that they constitute an offer of a unilateral contract which, when accepted by the charity by incurring liability in reliance thereon, becomes a binding obligation." (Also see *Cohoes Mem. Hosp. v Mossey,* 25 AD2d 476, 477.)

In this last-cited case the court said: "It is the well-established law of this State that charitable subscriptions (pledges) are enforceable on the ground that they constitute an offer of a unilateral contract which, when accepted by the charity by incurring liability in reliance thereon, becomes a binding obligation." (Also see *Matter of Metz,* 262 App Div 508; *Matter of Lipsky,* 45 Misc 2d 320.)

It is clear from the record before us that the plaintiff did all that the defendant expected it to do, including the building of the library, and naming it after defendant's wife. The defendant has demonstrated no defenses to the action of the plaintiff.

Accordingly, the order entered on December 3, 1975, granting plaintiff's motion for leave to renew and reargue plaintiff's motion for summary judgment theretofore denied and adhering to the court's original determination, should be reversed on the law and summary judgment should be granted to plaintiff, without costs and without disbursements.

Settle order.

KUPFERMAN and MURPHY, JJ., concur; STEVENS, P. J., and MARKEWICH, J., dissent and affirm for reason given by POSTEL, J.

Order, Supreme Court, New York County, entered on December 3, 1975, reversed, on the law, and summary judgment granted to plaintiff, without costs and without disbursements.

Settle order on notice.